### Richmond

WALTER LEE KEETER, JR. AND BERNARD THOMAS BRAY

V.

COMMONWEALTH OF VIRGINIA

June 12, 1981.

Record No. 801078.

Present: All the Justices.

*Mark S. Smith (John W. Drescher; Pickett, Spain & Lyle, P.C.,* on brief), for appellants.

*Richard B. Smith, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

The trial court, sitting without a jury, convicted Walter Lee Keeter, Jr., and Bernard Thomas Bray of possessing marijuana with the intent to distribute and of distributing marijuana in violation of Code § 18.2-248, and sentenced them to serve five years in the penitentiary on each charge, the sentences to run concurrently. We granted an appeal limited to the question whether the court erred in failing to determine that there were no exigent circumstances to justify the warrantless entry by police officers into the dwelling for which a search warrant was subsequently issued.

Prior to trial, the defendants filed motions to suppress all evidence seized pursuant to the search warrant issued on March 1, 1979. At trial, evidence was heard on the motions to suppress and on the offenses charged in the indictments to which the defendants had entered not guilty pleas. At the conclusion of the evidence, the trial court overruled the motions to suppress and found Keeter and Bray guilty as charged.

On March 1, 1979, a police informant, Charles Watkins, who worked at the White Heron Motel on Laskin Road in Virginia Beach, was provided $500 in marked currency to make a "controlled purchase" of marijuana. A transmitter was attached to Watkins's body so that the police could monitor the transaction. At the White Heron, Watkins paid $480 of the marked money to Nancy Roberts, who then asked her brother, Andrew, to get the marijuana. Roberts drove away in a Ford Pinto bearing license plates NAN-437, followed by Detectives A. L. Hymons and R. L. Schmehl in two separate unmarked cars, and proceeded to a residence at 2508 Reagan Avenue. Roberts entered the residence and soon reappeared carrying a clear plastic bag, one foot by one foot in size, containing a greenish-brown plant-like substance, and drove off. Hymons remained and kept the residence under surveillance while Schmehl followed Roberts back to the White Heron. Roberts returned the car keys to his sister, and she directed Watkins to the bag in the car. When Watkins entered the Pinto, Schmehl approached, seized the bag containing what appeared to be marijuana, and reported this information to the other police units assigned to the case. Nancy and Andrew Roberts were arrested.

During Hymons's surveillance of the residence he did not see anyone enter or leave the dwelling, but he did see a vehicle that he

described as a Ford Bronco, with two white males inside, drive away from the premises. Another officer, Detective Bach, followed the Bronco.

When the "controlled purchase" of marijuana had been completed, Detectives George O. Andrews and R. W. Harris proceeded from the White Heron to relieve Hymons at 2508 Reagan Avenue. Andrews dispatched Hymons to police headquarters to obtain a search warrant for the dwelling.

Bach reported by radio to Andrews that the Bronco had turned onto Virginia Beach Boulevard, and then that it had turned onto Laskin Road. At this time Andrews saw movement inside the residence; an occupant came to the window and looked out. Without waiting for Bach to give a further report on the destination of the Bronco, Andrews and Harris decided to enter the residence because, they testified, they were afraid, not of danger to themselves, but of destruction of evidence. They were concerned, Andrews said, that the suspects in the Bronco would continue on to the White Heron, observe the police activity still in progress there, and arrange to have the evidence in the residence destroyed before the search warrant could be served.

Andrews and Harris knocked on the front door and identified themselves as police officers to Cathy Wilson when she came to the door. Andrews informed her that a search warrant was being obtained and they were there to secure the residence "under exigent circumstances" until the warrant could be served. Upon entering, Harris remained in the living room with Wilson and a neighbor, a young woman who had nothing to do with the case, while Andrews walked through the dwelling, looked into rooms and closets, and ascertained that no one was hiding there. He neither searched for nor seized any contraband. Seeing bags of marijuana in plain view in various locations as he went through the house, Andrews telephoned Hymons at police headquarters, reported the presence of marijuana, and directed Hymons to continue in his effort to obtain the search warrant. Andrews also gave *Miranda* warnings to Wilson and the other woman detained in the living room.

Wilson informed Andrews that she, Keeter, and Bray resided in the house and that the two men had gone to a restaurant. Bach confirmed by radio to Andrews that he had observed the occupants of the Bronco enter a restaurant. Subsequently, Bach reported that the suspects had left the restaurant and appeared to

be returning to Reagan Avenue. At Andrews's direction, Bach followed the Bronco to 2508 Reagan Avenue, parked behind that vehicle, and escorted the men, Keeter and Bray, into the residence, where they too were detained by the officers until Hymons arrived with the search warrant.

After the search warrant was served, the officers searched the premises. They found and seized approximately 24 pounds of marijuana, three marijuana plants, a set of scales, and $15,580 in currency, in addition to the $480 of marked money used in the purchase made earlier by Watkins.

In argument before the trial court on the motion to suppress, counsel for Keeter and Bray primarily attacked the sufficiency of the affidavit supporting the search warrant but further denied that any emergency or exigent circumstances justified the warrantless entry by the officers to secure the residence at 2508 Reagan Avenue. The trial court merely overruled the motion without stating the basis for this action. Nevertheless, the motion to suppress was expressly directed to evidence seized pursuant to the search warrant rather than to evidence seized pursuant to the warrantless entry into the residence. Indeed, the record clearly shows that the seizure of evidence was made pursuant to the search warrant.

Detective Hymons prepared and as affiant executed the affidavit for the search warrant to search the premises at 2508 Reagan Avenue for "Marijuana and Marked money." The supporting facts were stated as follows:

On March 1, 1979, this writer received information from an informant who stated that a green 1973 Pinto bearing Va. license plates number NAN-437, would be used to pick-up and deliver marijuana in this city. This informant has been advised by the subjects involved that they had access to quantities of marijuana. This vehicle was parked at the White Heron located on Laskin R. During the observation of the Pinto, a white male entered the vehicle and drove it to 2508 Reagan Ave. As the white male subject was leaving 2508 Reagan Ave. he was observed placing a package in the floor of the right front seat of the Pinto. This package that was placed in the Pinto, came with the white male subject from inside the dwelling at 2508 Reagan Ave. The vehicle, Pinto, and driver were apprehended upon their return to the White Heron. The search of the right front seat area of the

Pinto produced the greenish-brown plant like known to this affiant as marijuana. Marked money (U. S. currency) was used to trace the movement of the marijuana by the suspects involved.

It is apparent, therefore, that the affidavit submitted to the magistrate in support of the application for the search warrant was based entirely upon the information that the marijuana delivered to the informant, Watkins, at the White Heron had been obtained by Andrew Roberts at 2508 Reagan Avenue. This information justified the magistrate's conclusion that the affiant had probable cause to believe that the marked currency and additional supplies of marijuana were at the same address. Nowhere in the affidavit is there any reference, express or implied, to any information received by Hymons from Andrews after the warrantless entry.[1] Moreover, no items of evidence were searched for or seized until the search warrant had been served.

In *United States* v. *Edwards,* 443 F. Supp. 192 (D. Mass. 1977), after extensive investigation and surveillance, law enforcement agents observed two men remove a package containing heroin from a car parked in front of a residence. One of the suspects with whom an F.B.I. agent on the surveillance team was acquainted gestured toward the agent and then, accompanied by the second suspect, carried the package into the residence. Although they knew that a search warrant was being prepared, the agents made a warrantless entry into the residence, searched for persons but not evidence, restrained the occupants, and secured the premises until the search warrant was issued. The court rejected the defendants' argument that the package should be suppressed as the fruit of an illegal entry, holding that it was neither searched for nor seized until after the warrant had been issued, and that it was therefore seized pursuant to the warrant and was untainted by the alleged illegality of the entry, even though the affidavit recounted the events that occurred outside the residence.

On appeal, the action of the trial court in overruling the motion to suppress was upheld, but on the ground that the warrantless entry was justified by exigent circumstances, *i.e.,* the reasonable apprehension that the surveillance had been discovered and the evidence would be destroyed. *United States* v. *Edwards,* 602 F.2d

---

[1] Keeter and Bray conceded, both on brief and in oral argument, that Hymons was already in the process of obtaining the warrant when he received the call from Andrews.

458, 468-69 (1st Cir. 1979). Nevertheless, the appellate court declined to reverse the holding of the trial court that the seizure was "factually and causally independent from the initial entry." *Id.* at 469-470, n.12.

In the present case, we hold that the evidence in controversy was seized pursuant to the search warrant, which was in the process of being issued before the residence was entered by the officers, and that the seizure was thus independent of the warrantless entry. Therefore, even if the entry was illegal, seizure of the evidence was not tainted thereby as "fruit of the poisonous tree" under *Wong Sun* v. *United States,* 371 U.S. 471 (1963). *See United States* v. *Sor-Lokken,* 557 F.2d 755 (10th Cir.), *cert. denied,* 434 U.S. 894 (1977); *United States* v. *Worthington,* 544 F.2d 1275 (5th Cir.), *cert. denied,* 434 U.S. 817 (1977); *United States* v. *Race,* 529 F.2d 12 (1st Cir. 1976).[2]

Nevertheless, we do not base our decision solely on this ground. At least one federal court has implied that for Fourth Amendment purposes a seizure of evidence may occur at the time of a warrantless entry when the officers secure the premises and restrain the occupants, and there is inculpatory evidence in plain view of the officers. *See United States* v. *Berrett,* 513 F.2d 154 (1st Cir. 1975); *United States* v. *Berkowitz,* 429 F.2d 921 (1st Cir. 1970). Under this rationale, if the warrantless entry is unlawful the seizure would be invalid. Therefore, absent controlling guidelines established by the Supreme Court we deem it advisable to determine the validity *vel non* of the warrantless entry in the present case.

Warrantless searches are *per se* unreasonable and violative of Fourth Amendment rights, subject to a few exceptions, such as danger to the law enforcement officers or risk of loss or destruction of evidence. *Arkansas* v. *Sanders,* 442 U.S. 753, 759 (1979); *see McDonald* v. *United States,* 335 U.S. 451, 454-55 (1948). Likewise, warrantless entries into residences, while *per se* unrea-

---

[2] Several courts have expressed the view that if certain evidence inevitably would have been discovered by lawful means, such evidence is not to be excluded merely because initially obtained by an improper seizure or entry. *Wayne* v. *United States,* 318 F.2d 205 (D.C. Cir.), *cert. denied,* 375 U.S. 860 (1963); *United States* v. *Seohnlein,* 423 F.2d 1051 (4th Cir.), *cert. denied,* 399 U.S. 913 (1970); *Lockridge* v. *Superior Court of Los Angeles County,* 3 Cal.3d 166, 474 P.2d 683 (1970), *cert. denied,* 402 U.S. 910 (1971). Since the warrant here was already being prepared and would have led to the discovery of the evidence, this rule would make the evidence admissible even if the prior entry was unlawful and constituted a seizure.

sonable, may be justified under exigent circumstances, such as the risk that evidence will be lost or destroyed. *See Vale* v. *Louisiana,* 399 U.S. 30, 34-35 (1970); *United States* v. *Edwards, supra,* 602 F.2d 458, 468 (1st Cir. 1979); *United States* v. *Picariello,* 568 F.2d 222 (1st Cir. 1978); *United States* v. *McLaughlin,* 525 F.2d 517 (9th Cir. 1975), *cert. denied,* 427 U.S. 904 (1976); *United States* v. *Rubin,* 474 F.2d 262 (3rd Cir.), *cert. denied,* 414 U.S. 833 (1973).

Contrary to the contention of Keeter and Bray, *Heaton* v. *Commonwealth,* 215 Va. 137, 207 S.E.2d 829 (1974), is inapposite. In *Heaton,* we acknowledged the general rule that "no-knock" entries to search pursuant to search warrants are *per se* unreasonable, subject to exceptions under exigent circumstances. Thus, the same principles that apply to warrantless entries apply to "no-knock" entries by law enforcement officers armed with search warrants. We held in *Heaton,* however, that a "no-knock" entry is not justified "where the only exigent circumstance is the readily disposable nature of the contraband that is the object of the search." 215 Va. at 139, 207 S.E.2d at 831. Nevertheless, an exigent circumstance exists justifying such an entry where the law enforcement officers have probable cause to believe that it is necessary to prevent destruction of evidence. *Johnson* v. *Commonwealth,* 213 Va. 102, 189 S.E.2d 678 (1972), *cert. denied,* 409 U.S. 1116 (1973). In the present case, the police officers made their warrantless entry relying upon their belief that it was necessary to prevent destruction of evidence. If they had probable cause so to believe, their entry was justified.

Therefore, in each case a determination must be made whether the law enforcement officers had probable cause at the time of their warrantless entry to believe that cognizable exigent circumstances were present. The officers are not required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight. They must be judged by their reaction to circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter was made.

Applying this standard, we hold that the warrantless entry in the present case was justified. Obviously, the "controlled purchase" by Watkins was carefully planned and observed in order to locate the source of supply of marijuana obtainable at the White Heron. The surveillance conducted by various police officers disclosed factual information that gave them probable cause

to believe that an unknown quantity of marijuana and the $480 in marked currency used by Watkins was at 2508 Reagan Avenue. Andrews and Harris then relieved Hymons in surveillance at the residence, and Hymons left to carry out Andrews's instructions that he obtain a search warrant for the property.

Andrews and Harris knew that two prime suspects had left the dwelling; they did not know that anyone remained inside. Andrews received radio reports from Bach, who was following the prime suspects, that they were proceeding on Laskin Road in the direction of the White Heron, where Andrews knew that Detective Schmehl was still "effecting arrests and removing vehicles and taking care of the Robertses." When Andrews observed movement in the house and saw an occupant come to the window and look out, he became apprehensive that the surveillance would be discovered and the search frustrated. Although he and Harris were in an unmarked police car, he felt that anyone looking at the car could easily identify it. But the chief concern of both officers was that the two suspects in the Bronco would observe the police activity at the White Heron and get word back to the residence to get rid of the incriminating evidence. Acknowledging that he made a "split-second decision," Andrews said that he and Harris made their move to prevent the evidence from being destroyed.

As it turned out, the suspects stopped at a restaurant and did not go to the White Heron, but Andrews acted on what appeared at the time to be the reasonable probability, rather than the mere suspicion, that they would continue to the scene of the marijuana transation and thereafter resort to prompt and evasive means to protect themselves. We conclude that the officers had probable cause to believe that it was necessary to make the warrantless entry to prevent the destruction of evidence. It follows that the trial court did not err in failing to determine that there were no exigent circumstances to justify the entry.

For the reasons assigned, we will affirm the judgment of the trial court.

*Affirmed.*