**Lorenzo FENNER, Angela Fenner and Melvin Davis, Plaintiffs,**

v.

**Richard F. DAWES, Anthony Sellers and the City of Newport News, Defendants.**

**Civ. No. 90-2–NN.**

United States District Court, E.D. Virginia, Newport News Division.

Sept. 21, 1990.

Sa-ad El–Amin, Richmond, for plaintiffs.

James E. Bradberry, Kenneth R. Yoffy, Weaver, Bradberry & Yoffy, Newport News, Va., for Dawes and Sellers.

Arthur G. Lambiotte, Newport News, Va., for City of Newport News.

## OPINION

DOUMAR, District Judge.

This matter is before the Court on the cross motions of the plaintiffs Lorenzo and Angela Fenner and the defendant City of Newport News. The Fenners contend, among other varied claims against diverse parties, that two so-called "no-knock" entries made by Newport News police officers in the course of executing search warrants violated their rights under the Fourth Amendment. After all parties presented evidence in a five-day trial, the Fenners moved for a directed verdict on their claims against the City of Newport News, and the City renewed its motion for summary judgment and also moved for a directed verdict. For the reasons set forth below, the plain-

tiffs' motion is DENIED and the City's motion is GRANTED.

## I.

Plaintiffs Lorenzo and Angela Fenner are owners and residents of a home at 83 Mataoka Drive in the City of Newport News, Virginia. Plaintiff Melvin Davis is a friend of the Fenners. Defendants Richard Dawes and Anthony Sellers are narcotics detectives in the Newport News police force. There is no dispute that Dawes and Sellers were acting under color of state law at the time of the incidents which formed the basis for the claims involved in this matter.

Plaintiffs filed a complaint containing eight separate counts against Detectives Dawes and Sellers as well as the City of Newport News, pursuant to 42 U.S.C. § 1983 and pendent state tort law theories. Lorenzo and Angela Fenner, as owners and residents of the home at 83 Mataoka Drive, claimed in Counts 1 and 6 of their Amended Complaint that the two so-called "no-knock entries" by Newport News police officers on August 8, 1989 and October 23, 1989, respectively, violated their Fourth and Fourteenth Amendment rights to be free from unreasonable search. At the time of trial, counts 1 and 6 were against the City of Newport News only.

At 9:12 p.m. on August 8, 1989, Detective Sellers applied to a State of Virginia magistrate for a warrant to search the residence located at 83 Mataoka Drive. In his affidavit supporting the application, Detective Sellers stated the following:

On 8 August 1989 this affiant received information from a reliable informant who stated that she/he had [been] to a house located at 83 Mataoka Dr., Newport News, Va., within the past 48 hours, and while there she/he observed a quantity of cocaine being offered for sale in clear plastic bags for $100.00 and higher prices. The informant also stated while she/he was there that she/he observed this cocaine being sold by a black male whose name she/he doesn't know. The informant also stated that when she/he left the residence there was still a quanti-

ty of cocaine there. I am requesting that this warrant be made a speedy entry warrant due to further information received by the informant in the matter that the black male at this residence will not open the door to the residence if he feels police are at the door and that he will also destroy the cocaine.

The warrant was issued, but it did not on its face specify the method of entry. At 11:00 p.m. that same evening, Detective Sellers and a team of fellow police officers executed the search warrant. The circumstances enunciated in the affidavit at the time the warrant was obtained were still in existence at the time of the execution of the warrant. The police officers effected an unannounced entry by forcing open the front door of the Fenners' residence. During the course of the search, Detective Sellers allegedly conducted unconstitutional personal searches of Lorenzo Fenner and Melvin Davis. This conduct, although part of this suit, is not the subject of this opinion. The search itself turned up an alleged cocaine grinder and a set of alleged cocaine scales, but no charges were filed as a result.

On October 23, 1989, Detective Dawes applied for a second warrant to search 83 Mataoka Drive. In his affidavit, Detective Dawes averred:

On this date this affiant received information from a reliable informant who stated that he had been to a dwelling house located at 83 Motaka [sic] Drive, Newport News, Virginia within the past 48 hrs. of this date and while at this address this informant observed a quantity of cocaine. This informant stated that this cocaine was in plastic bags and was being offered for sale by a black male called Low. This informant stated that the black male stated that he would dispose of the cocaine if the Police came to his home. This affiant is asking for a speedy entry so that the black male Low cannot dispose of the cocaine. This informant stated that when he left this address that a quantity of cocaine was still in this address.

This warrant also did not on its face specify the method of entry. Detective Dawes and his team similarly forced open the door to the residence. This search was essentially unsuccessful.[1]

A third search, not involved in this suit, was conducted in June of 1990, as a result of which drug charges were brought against Lorenzo Fenner, who is also known as Low.[2]

Although the facts as they concerned these counts were essentially undisputed at trial, the precise legal question to be answered was vigorously argued. The issues involve mixed problems of Fourth Amendment law and of municipal liability under § 1983.

## II.

■ To assert a § 1983 claim against a city, the alleged deprivation of constitutional rights must be attributable to a policy or practice of the city. In *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir.1987), Judge Phillips of the Fourth Circuit set forth the meaning of "policy" in § 1983 parlance:

Policy, in the narrow sense of discrete, consciously adopted courses of governmental action may be fairly attributed to a municipality either because (1) it is directly "made by its lawmakers," i.e., its governing body, or (2) it is made by a municipal agency.... A municipal agency or official may have the final policymaking authority by direct delegation from the municipal lawmaking body, or by conferral from higher authority.

824 F.2d at 1387. The Fenners correctly contend that the delegation of law enforcement policy-making authority to a police chief will permit a police chief to make policy attributable to the municipality. *See Wellington v. Daniels*, 717 F.2d 932 (4th Cir.1983).

■ A city may also be liable under § 1983 if a custom or usage attributable to the city results in the unconstitutional deprivation:

Custom and usage in the sense of persistent and widespread practices by municipal agents and employees may be attributed to a municipality when the duration and frequency of the practice warrant a finding of either actual or constructive knowledge by the municipal governing body that the practices have been customary among its employees. Actual knowledge may be evidenced by recorded reports to or discussions by a municipal governing body. Constructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of official responsibilities the governing body should have known of them.

Similarly, where a municipal policymaker has actual or constructive knowledge of such a course of customary practices among employees subject to the policymaker's delegated responsibility for oversight and supervision, the "custom or usage" may fairly be attributable to the municipality, as its own.

*Spell v. McDaniel*, 824 F.2d at 1387.

The policy initially at issue in this case was Policy & Procedure 604.1, on the subject of narcotics raids, which was promulgated by the Newport News Chief of Police. The policy first requires, in Section III.A.1., that the investigator obtain a search warrant:

Search warrants shall be obtained from the magistrate or judge. An affidavit for a search warrant supporting the issuance of a warrant shall be made prior to the time the search warrant is issued. A copy of the affidavit shall become part of and be served with the search warrant....

This section is based on Va.Code Ann. § 19.2–56, which provides as follows:

§ 19.2–56. *To whom search warrant directed; what it shall command; war-*

---

1. The search turned up a police lieutenant's cap which had been lost in a successful raid of the residence of an employee of Lorenzo Fenner.

2. Lorenzo Fenner has two prior convictions of dealing in controlled substances, one of which is on appeal. Charges arising from the June search have not been tried.

*rant to show date and time of issuance; copy of affidavit to be part of warrant and served therewith; warrants not executed within fifteen days.*—The judge, magistrate or other official authorized to issue criminal warrants, shall issue a search warrant if he finds from the facts or circumstances recited in the affidavit that there is probable cause for the issuance thereof.

Every search warrant shall be directed to (i) the sheriff, sergeant, or any policeman of the county, city or town in which the place to be searched is located, (ii) any law-enforcement officer or agent employed by the Commonwealth and vested with the powers of sheriffs and police, or (iii) jointly to any such sheriff, sergeant, policeman or law-enforcement officer or agent and an agent or officer of the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco and Firearms of the United States Treasury or the Drug Enforcement Administration. The warrant shall (i) name the affiant, (ii) recite the offense in relation to which the search is to be made, (iii) name or describe the place to be searched, (iv) describe the property or person to be searched for, and (v) recite that the magistrate has found probable cause to believe that the property or person constitutes evidence of a crime (identified in the warrant) or tends to show that a person (named or described therein) has committed or is committing a crime.

The warrant shall command that the place be forthwith searched, either in day or night, and that the objects or persons described in the warrant, if found there, be seized. An inventory shall be produced before a court having jurisdiction of the offense in relation to which the warrant was issued as provided in § 19.2–57.

Any such warrant as provided in this section shall be executed by the policeman or other law-enforcement officer or agent into whose hands it shall come or be delivered. If the warrant is directed jointly to a sheriff, sergeant, policeman or law-enforcement officer or agent of the Commonwealth and a federal agent or officer as otherwise provided in this section, the warrant may be executed jointly or by the policeman, law-enforcement officer or agent into whose hands it is delivered.

Every search warrant shall contain the date and time it was issued. However, the failure of any such search warrant to contain the date and time it was issued shall not render the warrant void, provided that the date and time of issuing of said warrant is established by competent evidence.

The judge, magistrate, or other official authorized to issue criminal warrants shall attach a copy of the affidavit required by § 19.2–54, which shall become a part of the search warrant and served therewith. However, this provision shall not be applicable in any case in which the affidavit is made by means of a voice or videotape recording or where the affidavit has been sealed pursuant to § 19.2–54.

Any search warrant not executed within fifteen days after issuance thereof shall be returned to, and voided by, the officer who issued such search warrant.

Section III.C.3. of the policy requires, as a general rule, that when executing the warrant police officers must announce their presence and purpose before forcing an entrance to the premises. The policy goes on to direct:

> The only exception where the announcement of authority and purpose is NOT REQUIRED is whenever there is probable cause to believe that such an announcement will cause jeopardy to the search team or others, or that evidence will be destroyed if an announcement is made.

> When the above probable cause exists AT THE TIME THE AFFIDAVIT SUPPORTING THE WARRANT IS DRAFTED, the information shall be entered as part of the affidavit along with authorization for a "NO KNOCK" entry. Some of the factors that will contribute to probable cause are:

. . . . .

c. knowledge that an occupant would intend to frustrate searches by destroying seizable items following an announcement of authority and purpose.

. . . . .

■ The apprehension that a suspect might destroy narcotics if he had notice of police presence is an exigent circumstance justifying a no-knock entry. *Ker v. California*, 374 U.S. 23, 40, 83 S.Ct. 1623, 1633, 10 L.Ed.2d 726 (1963).

In the case of each of the two warrants at issue here, the affidavit which was made the basis for the warrant was attached to the warrant, and by virtue of the statute became a part of the warrant. The warrant issued on August 8, 1989 set forth, in part, as follows:

> You are hereby commanded in the name of the Commonwealth to forthwith search either in day or night a house located at 83 Motoka [sic] Drive, Newport News, Virginia. . . .

The warrant did not "command," "authorize" or "deny" a no-knock entry. The statutory language was followed in the warrant. The October 23, 1989 warrant contained identical language.

The City's liability, if any, must be predicated on a constitutional deprivation brought about by a "policy" or "custom" of the City of Newport News. Liability is claimed to exist by virtue of Policy 604.1, issued by the Chief of Police. The policy requires a police officer to disclose any exigent circumstances which would justify a no-knock entry and which are known to him at the time he applies for a search warrant. The policy states that "the information shall be entered as part of the affidavit along with *authorization* for a "NO KNOCK" entry." (Emphasis added). One police officer testified that the reason for this policy was to establish that the exigent circumstances were not manufactured after the fact in order to post-validate the entry.

The Fenners initially contend that this policy required the magistrate to issue a "no-knock warrant" by affirmatively authorizing or ordering a no-knock entry on the face of the search warrant itself. The Fenners argue that if the magistrate did *not* affirmatively approve or order a no-knock entry based on the exigent circumstances presented to him at the time application for a warrant was made, then the officers could not use a no-knock entry to execute the warrant, absent the subsequent appearance of additional exigent circumstances.

The Fenners argue that because the two search warrants involved in this suit did not show on their face explicit authorization or command by the magistrate for a no-knock entry, the no-knock entries in such circumstances were unconstitutional. They claim in each case that because the facts were presented to a magistrate who did not affirmatively authorize a no-knock entry, then authority for such an entry is presumed to have been denied.

This argument is problematic for a number of reasons. First, the policy does not specify that the authorization for a no-knock entry must come from the *magistrate*. The policy requires that known exigent circumstances be stated in the affidavit "along with authorization for a "NO KNOCK" entry." It does not specify from whom the authorization is to be obtained, whether from some superior officer in the police department, the City Attorney, the Commonwealth's Attorney, or from the magistrate. The Attorney General of the United States, for example, must authorize the interception of wire or oral communications by federal investigatory agencies. 18 U.S.C. § 2516.

Second, the policy by its own terms does not require that authorization for a no-knock entry be placed on the warrant itself. The policy provides only that the information concerning exigent circumstances "shall be entered as *part of the affidavit* along with authorization for a 'NO KNOCK' entry." (Emphasis added.) The policy says nothing about placing no knock authorization on the warrant itself. It provides that "[a] copy of the affidavit shall become *part of and be served with the search warrant.*" (Emphasis added.) In this case, the information was entered as a part of the affidavit which was attached to and made a part of each warrant.

Third, even if the Newport News policy expects that the magistrate will authorize the no-knock entry, Virginia state law clearly does not authorize the magistrate to do so. Counsel have cited no Virginia statute or case authorizing a magistrate to issue a no-knock warrant, and the Court has discovered none. This Court is not aware of any custom or practice for magistrates to issue such warrants, and finds that there is none in this area.

### III.

■ The jurisdiction and powers of magistrates are set forth in Va.Code Ann. §§ 19.2–44, 19.2–45 (1990 Repl.Vol.). A Virginia magistrate has jurisdiction only "to issue search warrants in accord with the provisions of §§ 19.2–52 to 19.2–60 of the Code." Va.Code Ann. § 19.2–45(2). Section 19.2–56, quoted in full above, specifically sets forth in detail what the warrant "shall command." No-knock entries are not within the scope of what a warrant shall command.

■ The principal Virginia cases which concern no-knock entries indicate that the common law is controlling and that police officers may effect such entries based on exigent circumstances only as they exist at the time of entry. These cases say nothing of prior approval by a magistrate based on exigent circumstances existing at some earlier time when the search warrant was issued. In *Johnson v. Commonwealth,* 213 Va. 102, 189 S.E.2d 678 (1972), the Virginia Supreme Court upheld the validity of a no-knock entry in the execution of a search warrant in a case where the police, at the time of entry, had reliable information that the occupants of the residence were likely to destroy illegal drugs if they knew of the presence of police. Because there was no specific statute relating to no-knock entries in the execution of search warrants, the Court considered only whether the entry was reasonable within the meaning of the Fourth Amendment. *Id.* at 103, 189 S.E.2d at 679. *See also Heaton v. Commonwealth,* 215 Va. 137, 207 S.E.2d 829 (1974) (no-knock entry *not* justified when police at the time of entry knew of no

exigent circumstances). In *Keeter v. Commonwealth,* 222 Va. 134, 278 S.E.2d 841 (1981), which concerned analogous exigent circumstances justifying a warrantless search, the Virginia Supreme Court held:

> Therefore, in each case a determination must be made whether the law enforcement officers had probable cause *at the time of their warrantless entry* to believe that cognizable exigent circumstances were present. The officers are not required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight. They must be judged by reaction to *circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter is made.*

*Id.* at 141, 278 S.E.2d at 846 (emphasis added).

It is clear that under Virginia law, the authority to effect a no-knock entry stems from exigent circumstances reasonably appearing to the officers to be in existence at the time the entry is made, and not at the time the warrant is obtained. Thus, under Virginia law a magistrate lacks authority to *"command"* a no-knock entry in advance of the entry.

■ Even if Newport News policy required police officers in some circumstances to obtain authority for a no-knock entry from a magistrate, or someone else, violation of that policy would not necessarily make out a constitutional claim under § 1983. In *Fisher v. Washington Metropolitan Area Transit Authority,* 690 F.2d 1133 (4th Cir.1983), the Fourth Circuit held that federal constitutional standards of criminal procedure are not affected by the fact that state law may impose more stringent standards upon state police officers. *Fisher,* 690 F.2d at 1138. The question in a § 1983 case is not whether state law or local policy has been violated, but whether federal constitutional rights have been abridged.

■ The constitutionality of no-knock entries and the role, if any, of "no-knock warrants," are definitively analyzed in La-

Fave's treatise on Fourth Amendment law, which sets forth as follows:

A small number of jurisdictions have adopted legislation permitting magistrates to issue search warrants specifically authorizing entry without prior announcement upon a sufficient showing to the magistrate of a need to do so, either to prevent destruction of evidence or to prevent harm to the executing officer. (The prevailing but not unanimous view is that a magistrate may not issue a so called no-knock search warrant in the absence of such a statutory provision.) Much has been written about no-knock warrants, primarily concerning the since-repealed provisions in the District of Columbia and in the federal drug laws, but no effort will be made here to assay the various statutory provisions. Rather, the concern here is a limited one: whether, on Fourth Amendment grounds, it may ever be said that the magistrate is either required or forbidden to decide the matter of whether the circumstances call for entry without notice.

In *Parsley v. Superior Court* [9 Cal.3d 934, 109 Cal.Rptr. 563, 513 P.2d 611 (1973)], the court, in the course of holding that magistrates in California were without legal authority to issue no-knock warrants, made some comments which might be taken to cast serious doubt upon the constitutionality of any no-knock warrants legislation:

While a search warrant must necessarily rest upon previously obtained information, unannounced entry is excused only on the basis of exigent circumstances existing at the time an officer approaches a site to make an arrest or execute a warrant. Facts existing at the time of obtaining a warrant may no longer exist at the time of entry. Such an emergency, therefore, can be judged only in the light of circumstances of which the officer is aware at the latter moment.

If, as concluded earlier, the Fourth Amendment forbids the "blanket" approach to notice exceptions, whereby a risk of evidence destruction is assumed in *all* narcotics cases, and a risk of harm

to the officer is assumed in *all* cases where the occupant owns a gun, then there is much truth in the above statement. If the blanket rule is unconstitutional when administered by the officer, it is no less so when administered by the magistrate. But, while it is unfortunately the case that the blanket rule has taken firmest hold in those jurisdictions with no-knock warrants legislation, this is not an inevitable consequence of a no-knock warrant system. This is because, as the *Parsley* court acknowledged on another occasion, it *sometimes* happens that the facts which would justify entry without notice are known at the time of the application for the warrant. A risk of evidence destruction may be based upon the informer's revelation that the gambling records are on flash paper, or a risk of harm to the officer may be established upon information that the defendant regularly answers the door with a weapon at the ready. In circumstances such as these, it is hardly a basis for complaint that the officer passed these facts on to the magistrate and permitted him to make a judgment as to whether they were sufficient to justify entry without prior announcement.

But, what if the officer requesting the warrant did not pass these facts on to the magistrate? Admitting that often the assessment of the facts and circumstances must be left to the police because of events occurring in the immediate proximity to the time the warrant is executed, does it follow that the officer should be permitted to make a judgment himself even when the relevant facts are known at the time of the warrant application? While it has been asserted that the police "ought never have authority to decide to enter unannounced solely on the basis of prior information," other commentators and the courts have assumed that police are *never* required to put this matter before the issuing magistrate.

Evidence that the Supreme Court would not require use of no-knock warrants, even when the relevant informa-

tion was at hand at the time the search warrant was issued, is provided by *Dalia v. United States* [441 U.S. 238, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979)]. That case concerned a court order authorizing the interception of oral conversations occurring within the petitioner's office, incident to which FBI agents made a covert entry to install an electronic bug in the ceiling. Though the petitioner claimed the court order was insufficient under the Fourth Amendment because of its failure to specify covert entry as the manner of execution, the Court, per Powell, J., responded:

> Nothing in the language of the Constitution or in this Court's decisions interpreting that language suggests that, in addition to the three requirements discussed above [probable cause, particular description of the place to be searched, particular description of things to be seized], search warrants also must include a specification of the precise manner in which they are to be executed. On the contrary, it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant—subject, of course, to the general Fourth Amendment protection "against unreasonable searches and seizures." ...

> It would extend the warrant clause to the extreme to require that, whenever it is reasonably likely that the Fourth Amendment rights may be affected in more than one way, the court must set forth precisely the procedures to be followed by the executing officer. Such an interpretation is unnecessary, as we have held—and the government concedes—that the manner in which a warrant is executed is subject to later judicial review as to its reasonableness.

2 W. LaFave, *Search and Seizure* 287–90, § 4.8(g): Entry Without Notice or By Force—No-knock search warrants (2d ed. 1987) (footnotes omitted). The above quotation sets forth Justice Powell's clear rejection of the contention that a court, when issuing a search warrant, "must set forth precisely the procedure to be followed by the executing officer."

It is therefore absolutely clear, even construing the Newport News policy as plaintiffs argue it should be construed, that its violation does not make out a constitutional violation without further showing that exigent circumstances in existence at the time of the two searches in question were insufficient to justify no-knock entries.

## IV.

At this point, the Fenners shift their argument from an attack on the written policy, and argue instead that the policy encourages a practice of unconstitutional no-knock entries. In essence, the Fenners contend that Newport News police officers, once armed with a search warrant "authorizing" a no-knock entry, effect such entries regardless of whether the exigent circumstances present when the warrant was issued are still present at the time of entry. This argument requires two inquiries. First, did either Detective Sellers or Detective Dawes execute a no-knock entry into the Fenners' home despite the absence of exigent circumstances at the time the entry was made, and so violate the Fenners' Fourth Amendment rights? Second, if so, was either violation part of a practice or custom attributable to the City of Newport News?

█ In addressing the first question, this Court begins with the exigent circumstances set forth in each affidavit. The affidavit relating to the August 8, 1989 warrant, obtained by Detective Sellers, relies on the statement of a reliable informant that an unnamed black male at 83 Mataoka Drive was in the possession of cocaine, and that the black male would not open the door to police and would destroy the drugs if he knew police were present.

At trial there was no contest that Detective Sellers genuinely believed the information contained in the affidavit. It was also undisputed that the facts set forth in the affidavit set forth exigent circumstances justifying a no-knock entry. Under *Ker v.*

*California, supra,* and *Johnson v. Commonwealth, supra,* it is clear that if Detective Sellers reasonably believed that cocaine was present in the house, and reasonably believed that the occupant would destroy the evidence, then there were sufficient exigent circumstances to allow a forcible entry.

The issue, however, is not whether there were exigent circumstances when the warrant was obtained, at 9:12 p.m., but whether the same or other exigent circumstances existed at 11:00 p.m., almost two hours later, when the warrant was executed. The uncontroverted testimony of several police officers, in response to questioning by the plaintiff's attorney, showed that the exigent circumstances existing at 9:12 p.m. had not changed by the time of entry at 11:00 p.m.

The affidavit supporting the search warrant obtained by Detective Dawes on October 23, 1989, specified similar circumstances. Dawes relied on a reliable informant's statement that he had been inside the residence at 83 Mataoka Drive, where a black male named "Low" was selling cocaine, and that Low had indicated he would destroy the drugs if police came. Again, there was no contest as to the detective's genuine belief in the information set forth in the affidavit. Nor is there much dispute that the affidavit stated exigent circumstances which, if they remained unchanged, could justify a no-knock entry. My trial notes do not indicate whether the officers were questioned as to whether circumstances had changed by the time of entry.

■ This raises the question of the burden of proof. In a case where exigent circumstances are presented in an affidavit prior to the execution of a search warrant, must the plaintiff in a civil rights case prove that these circumstances did not still exist at the actual time of entry? Or must the defendant prove that the circumstances continued to exist, or that other exigent circumstances existed? [3]

To recover under § 1983, a plaintiff must prove that he was deprived of a right secured by the Constitution. *Monroe v. Pape,* 365 U.S. 167, 171, 81 S.Ct. 473, 475–76, 5 L.Ed.2d 492 (1961). The occurrence of that deprivation is the first element of a § 1983 claim, and the plaintiff bears the burden of proof. Because the execution of a search warrant by a no-knock entry is constitutionally permissible when exigent circumstances are present, proof of a no-knock entry alone does not establish a § 1983 claim. Therefore, the Fenners bear the burden of proving that the two no-knock entries were unreasonable under the circumstances. *See Miller v. Taylor,* 877 F.2d 469, 472 (6th Cir.1989) ("Since the use of deadly force by a police officer is constitutionally permissible under some circumstances, proof of defendant's use of deadly force alone would not satisfy the first element of a section 1983 claim."); *Edwards v. City of Philadelphia,* 860 F.2d 568 (3rd Cir.1988) (same); *Davis v. Lane,* 814 F.2d 397, 401 (7th Cir.1987) ("To prevail on an eighth amendment claim, a plaintiff bears the burden of proof on every element, including the burden of proving that the defendants acted *without* justification."). This burden they have failed to carry.

■ Whether or not Detectives Dawes or Sellers reasonably believed that exigent circumstances justified their forcible entries at the time the entries were made—and the trial record shows no evidence that they did not—that inquiry, if affirmatively answered, would only be a predicate to the question of the liability of the City of Newport News. There is no such thing as a doctrine of *respondeat superior* against a municipality in § 1983 cases. *Spell v. McDaniel,* 824 F.2d 1380, 1385 (4th Cir. 1987). A city is not responsible for the unconstitutional acts of its employees unless those acts are directly attributable to a policy or custom of the city itself.

■ The City of Newport News, out of an abundance of caution, adopted a policy which was clearly designed to protect the constitutional rights of its citizens. The policy requires police officers, if aware of

---

**3.** There is much authority that a condition once shown to exist is presumed to continue until the

contrary is shown but this opinion is not utilizing that presumption.

exigent circumstances at the time of application for a search warrant, to state those circumstances in the affidavit. This is ostensibly to protect citizens whose homes are so searched from the *post hoc* manufacture of evidence of exigent circumstances by the police. The policy also requires that police officers include in their affidavits "authorization for a no-knock entry."

This policy is not of itself unconstitutional. However, the Fenners claim that the policy has led to an unconstitutional practice. They contend that the policy misleads police officers into believing that once they have set forth exigent circumstances in an affidavit, they then have *carte blanche* to effect a no-knock entry, regardless of whether the exigent circumstances continue to exist until the time of entry.

 Even if this was true in the case of the two entries of the Fenners' home, they have not shown a practice of such "duration and frequency" as to warrant a finding of "either actual or constructive knowledge by the municipal governing body that the practices have become widespread among its employees." *Spell v. McDaniel,* 824 F.2d at 1387. In this case, there is evidence of only the two particular incidents. There is no evidence of any other similar incidents. There is no proof that the City of Newport News knew of or condoned such a practice as the Fenners allege. The City of Newport News presented evidence to the contrary in that no criminal defendant has ever moved to suppress evidence obtained through a search warrant purporting to authorize a no-knock entry.

Even if the Fenners could prove that their constitutional rights were violated by Detectives Sellers or Dawes, and even if they could prove that these violations were part of a municipal practice—and they have not proved either point—they would still have to establish a causal link between the City policy and the particular violations.

 A municipal policy or custom is itself unconstitutional when it directly commands or authorizes constitutional violations. Then the causal connection between

policy and violation is manifest and does not require independent proof. *Spell v. McDaniel,* 824 F.2d at 1387. No evidence is needed in the case other than the statement of the policy. This Court has determined that the written policy in this case, however, was not of itself unconstitutional.

 A policy or custom that is not itself unconstitutional in this strict sense must be independently proven to have caused the violation. Proof merely that such a policy or custom was "likely" to cause a particular violation is not sufficient. There must be proven at least an "affirmative link" between the policy or custom and the violation; in the grammar of tort law, the causal connection must be proximate, not merely "but-for" causation-in-fact. *Id.* at 1387–88 (*citing City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985)). The city must be shown to have given at least tacit authorization to unconstitutional employee conduct. Neither the existence of such a policy or custom nor the necessary causal connection can be established merely by proof of a single violation. *Spell v. McDaniel,* 824 F.2d at 823, 824; *Wellington v. Daniels,* 717 F.2d 932, 936–37 (4th Cir.1983).

The key to liability of the City of Newport News is whether City policy-makers had reason to know of and tacitly condoned a police practice of reliance on affidavits setting forth exigent circumstances to make no-knock entries, notwithstanding a lack of exigent circumstances at the actual time of entry. Under the circumstances of this case, this Court cannot find any issue for the jury that would go toward holding the City of Newport News liable. Nor can this Court find any fault with the written policy that tries to guard the constitutional rights of its citizens. Although it may be conceivable that the policy could lead to a constitutional violation, there has been no evidence that such violation occurred, or, if it in fact occurred, that it was caused by a practice of the City of Newport News.

### V.

In summary: first, in Virginia there is no authority in either statutory or common

**416**

law for a magistrate to authorize a no-knock entry for the execution of a search warrant. Second, a city policy which requires police officers to set forth the facts constituting exigent circumstances known to them at the time of executing the affidavit for a search warrant is not unconstitutional. Third, violation of a city policy to require "authorization" cannot be the basis for a federal constitutional claim unless it violates some federal law. Fourth, under federal constitutional law, the reasonableness of a no-knock entry must be determined by reference to the exigent circumstances which exist at the time of execution, not at the time the search warrant was obtained. Fifth, the plaintiff in a § 1983 case has the burden of proving that a no-knock entry was unreasonable under the circumstances existing at the time of execution of the warrant, and the plaintiffs in this case have failed to present any such evidence. Sixth, even were an unconstitutional entry made by officers, there was no showing that this type of unconstitutional conduct was known to and condoned by the City of Newport News so as to be a custom of the City.

A directed verdict and summary judgment is GRANTED for the defendant City of Newport News as to Counts 1 and 6 in this case. The plaintiff's motion is DENIED.