COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Senior Judge Hodges
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.    Record No. 0467-99-4        JUDGE LARRY G. ELDER
                                        JULY 20, 1999
CARLOS F. MARTINEZ


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
F. Bruce Bach, Judge

Virginia B. Theisen, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellant.

David Bernhard (Cheryl Gardner; Bernhard &
Gardner, on brief), for appellee.


Carlos F. Martinez (defendant) stands indicted for two

counts of assault and battery on a police officer.  The

Commonwealth appeals a pretrial ruling of the Fairfax County

Circuit Court (trial court) granting defendant's motion to

suppress all evidence resulting from an allegedly illegal entry

into defendant's home.  On appeal, the Commonwealth contends the

trial court erroneously held (1) that no exigent circumstances

justified the entry and (2) that the officer subjected defendant

to a custodial interrogation without first Mirandizing him.  We

affirm the trial court's ruling granting the motion to suppress.

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

I.

FACTS

On the evening of October 19, 1998, Police Officer Kristi Denham received information that, during a 911 call, a man and woman were screaming in the background and that the woman sounded as if she was out of breath before the phone was disconnected.

Denham testified that she had responded to a minimum of one hundred domestic violence calls and that she knew, based on her experience and specialized training, that domestic violence situations tend to be emotional, high stress encounters. Her goal was to keep the suspected disputants apart so as to ensure their safety and the safety of others.

Officer Denham arrived on the scene, and her back-up officer, Officer Vickery, arrived about thirty seconds later. Officer Denham saw Milvia Galeano, defendant's wife, standing in the front yard crying. Galeano had a "fresh" red mark on her neck and was holding her neck and pointing toward defendant, who was standing in the front door of the house. Denham spoke briefly to Galeano, who spoke Spanish and could not communicate very well in English. Officer Denham interpreted Galeano's statements and actions to mean that defendant was the cause of her injury and her emotional upset. Although Officer Vickery spoke Spanish and could have communicated more easily with

-

Galeano, Denham chose to approach defendant before attempting, through Vickery, to obtain further information from Galeano.

Denham testified that the storm door was open several inches and that she thought defendant, who had a set of keys in his hand, was "getting ready to exit the house." As Denham approached, she noticed two children inside the house with the defendant, and Denham became concerned for their safety, as well as the safety of Galeano, herself and Officer Vickery. Denham said her training taught her to be conscious of the risk of a parent taking his children hostage in order to prevent arrest or the risk that he would obtain a weapon with which to threaten those outside the house. Denham did not believe at that point that she had sufficient cause to arrest defendant or pat him down for weapons, but she wanted to question him about the possible domestic dispute and said she did not consider him free to leave.

Without requesting permission from defendant or Galeano, Denham opened the storm door and walked a few feet inside the door. Prior to Denham's entry, defendant was "calm in that he wasn't yelling [or] . . . screaming." He was not threatening the children or anyone else, and Denham saw no weapons. The only behavior Denham thought was unusual or "strange" was that defendant refused to look at her, looking instead at the ground and shifting his eyes back and forth, which she interpreted to mean "he was looking for an avenue of escape."

-

Denham, viewing the keys in defendant's hand as a potential weapon, took them out of his hand and tossed them onto the nearby couch.  When she asked him twice what had happened, he told her both times to ask the children.  In a more authoritative voice, Denham told him that he needed to tell her what happened.  He then said that he and his wife had an argument over the use of the telephone and that, during the argument, "he somehow hit her neck."  Denham advised him that she was placing him under arrest for domestic assault.  Denham said he refused to cooperate, and he subsequently was charged with assault and battery on both Denham and Vickery.

Galeano testified at the motion hearing with the aid of an interpreter.  Galeano explained that she and defendant had had "an altercation" that "wasn't anything great" and that her ten-year-old son called 911.  She said she was outside when the police arrived because she was going to make a phone call.  Galeano testified that, in response to Denham's questions, Galeano told her three times that "everything was calm."  Galeano denied that she was crying when Denham arrived.  When Officer Vickery arrived on the scene, Denham "went up to the door [and] . . . told [defendant] to put his hands up."  Defendant then asked Denham three times to "let [him] explain."  Galeano denied that defendant was responsible for the red mark on her neck and said that Officer Hall, "who . . . offered . . .

-

to take [her] to prison," caused those marks without provocation.[1]

Galeano admitted that defendant had been convicted for assaulting her on three prior occasions.  No evidence indicated that Officer Denham was aware of this fact when she responded to the call.  Further, no evidence indicated that appellant previously had harmed or threatened to harm his children.

The trial court granted the motion to suppress, ruling that no exigent circumstances existed to justify Denham's warrantless entry into defendant's home and that defendant was subjected to a custodial interrogation without benefit of Miranda warnings.

II.

ANALYSIS

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights.  See Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989).  On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to

---

[1] No evidence in the transcript of the motion hearing further identified Officer Hall or explained his involvement.

-

support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)).  However, we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case. See Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663.

The Fourth Amendment protects people from unreasonable searches and seizures.  U.S. Const. amend. IV.  "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Payton v. New York, 445 U.S. 573, 590, 100 S. Ct. 1371, 1382, 63 L. Ed. 2d 639 (1980) (emphasis added).  "Among the circumstances accepted as providing 'exigent circumstances' for a warrantless search [or seizure in a private residence] are those where a true 'emergency' exists."  Reynolds v. Commonwealth, 9 Va. App. 430, 436, 388 S.E.2d 659, 663 (1990).  As the United States Supreme Court has observed,

> [w]e do not question the right of the police
> to respond to emergency situations. . . .
> [T]he Fourth Amendment does not bar police
> officers from making warrantless entries and
> searches when they reasonably believe that a

-

person within is in need of <u>immediate</u> aid. . . . "The need to <u>protect or preserve life</u> or <u>avoid serious injury</u> is justification for what would be otherwise illegal absent an exigency or emergency." . . . [A] warrantless search must be "strictly circumscribed by the exigencies which justify its initiation" . . . .

<u>Mincey v. Arizona</u>, 437 U.S. 385, 392, 98 S. Ct. 2408, 2413, 57 L. Ed. 2d 290 (1978) (emphases added; citations and footnotes omitted).

In each such case, the court must determine "whether the law enforcement officers had probable cause at the time of their warrantless entry to believe that cognizable exigent circumstances were present." <u>Keeter v. Commonwealth</u>, 222 Va. 134, 141, 278 S.E.2d 841, 846 (1981) (entry to prevent destruction of evidence); <u>see</u> <u>Oliver v. United States</u>, 656 A.2d 1159, 1166 (D.C. 1995) (equating "reasonable belief" language in <u>Mincey</u> with "probable cause"). We evaluate the existence of probable cause under a standard of objective reasonableness. <u>See</u>, <u>e.g.</u>, <u>Whren v. United States</u>, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996). "The officers are not required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight. They must be judged by their reaction to circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter was made." <u>Keeter</u>, 222 Va. at 141, 278 S.E.2d at 846.

-

Here, regardless of whether we view the facts in the light most favorable to the Commonwealth or to the defendant,[2] the outcome is the same. Even under the Commonwealth's version of the facts, Officer Denham lacked a sufficient legal basis for entering defendant's home without a search or arrest warrant. Although a <u>potentially</u> volatile domestic situation existed in this case, the facts known to Officer Denham did not provide probable cause to believe the officer's "immediate" entry into defendant's home was necessary to "protect or preserve life or avoid serious injury" to Galeano or her children. Galeano herself was outside the home with Officer Vickery while defendant was inside the home. Although the officer's experience and training are relevant to interpreting the dynamics of a potentially dangerous situation, they cannot be the sole basis for exigent circumstances without evidence to substantiate the officer's concerns. The record contains no evidence that defendant was armed, raised his voice, or made any threats toward Galeano, his children or the officers. In fact,

---

[2] The Commonwealth argues that the trial court ruled on the motion to suppress without considering Galeano's testimony and contends that Galeano's testimony was inherently incredible. The trial court did not--and was not required to--make clear whether it believed the testimony of Officer Denham or the testimony of Milvia Galeano, or some combination of the two. However, it appears to have assumed, for the purpose of its ruling, that Galeano's testimony was incredible and to have found under the version of the facts most favorable to the Commonwealth that no exigent circumstances justified Denham's warrantless entry.

the evidence indicates that, prior to Officer Denham's entry, appellant was calm and, at most, was "looking for an avenue of escape." Defendant's mere presence in his own home with his two children following some sort of altercation with his wife did not provide the officers with probable cause to believe that immediate entry was necessary to prevent death or serious injury. To hold otherwise would be to create a blanket exception to the warrant requirement in cases involving domestic disputes. We decline the Commonwealth's invitation to do so. Compare Oliver, 656 A.2d at 1168 (holding that "person's status as a kidnapping victim places him or her in continuing danger of harm at the hands of his or her captor," permitting immediate entry of residence under emergency exception to warrant requirement, "even if the victim apparently is being well treated"); State v. Applegate, 626 N.E.2d 942, 943-44 (Ohio 1994) (holding that police who responded to 911 call from wife reporting domestic dispute and asking that husband be removed from the home were justified in entering house under emergency exception to warrant requirement to ascertain welfare of wife after they arrived outside residence and heard an angry male voice and the sound of furniture being turned over).

Because we affirm the trial court's ruling granting the motion to suppress all statements and evidence based on the officer's illegal entry into the defendant's home, we do not reach the issue of whether his statements about hitting his wife

-

should have been suppressed as the product of a custodial interrogation for which he received no <u>Miranda</u> warnings.

For these reasons, we affirm the ruling of the trial court and remand for further proceedings consistent with this opinion. We make no comment on the impact of this ruling on defendant's two pending charges for assault and battery of a law enforcement officer as no such question is before us on appeal.

<u>Affirmed and remanded.</u>