COMMONWEALTH OF VIRGINIA

v.

LEROY WOODY

No. 0647-91-3

Decided September 20, 1991

COUNSEL

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellant.

Leslie E. Allen, III (Harris, Black & Allen, P.C., on brief), for appellee.

OPINION

ELDER, J.—Leroy Woody, defendant, was indicted for possession of heroin with intent to distribute and for possession of cocaine with intent to distribute. The trial court granted a motion to suppress evidence seized pursuant to a search warrant, from which ruling the Commonwealth appeals. We reverse.

On October 15, 1991, a search warrant was issued for defendant's residence at 706 Norwood Street. In support of this warrant, an affidavit stated that informants had witnessed sales of heroin by defendant at 706 Norwood and had, within the past forty-eight hours, observed a quantity of heroin at that address.

The tactical unit and members of the vice squad of the Lynchburg Police Department approached 706 Norwood in unmarked vehicles, including a van with its side door open and its interior filled with uniformed officers. As the van passed by the house next door to 706 Norwood, police saw a man, later identified as Ronald Hamler, leaving the house at 706 Norwood, and a second man remaining behind in the doorway as Hamler left. As the officers in the van continued their approach, the man in the doorway retreated to the interior of the house.

When Hamler saw the approaching van, with its side door open and its interior filled with uniformed officers, he turned and ran. Several vice officers pursued him. At the time Hamler saw the approaching officers, he had left the porch at 706 Norwood and was in the yard. After Hamler fled, those officers remaining in the van stopped in front of 706 Norwood, opened the front door without knocking, entered and announced, "Police officers, we have a search warrant," and, "This is a raid; get down on the floor."

Law enforcement officers who seek to enter premises pursuant to a search warrant "must attempt to gain admittance

peaceably by announcing their presence, identifying themselves as police officers and stating their purpose." *Heaton v. Commonwealth*, 215 Va. 137, 138, 207 S.E.2d 829, 830 (1974). Either of two exceptions to this rule, when met, permits officers to make an unannounced entry: (1) when officers "have probable cause to believe that their peril would be increased if they announced their presence" or (2) when officers have probable cause to believe "that an unannounced entry is necessary to prevent persons within from escaping or destroying evidence." *Id.* The mere fact that the object of a search is contraband of a "readily disposable nature" will not satisfy the second exception. *Id.* at 139, 207 S.E.2d at 831. Instead, in order for the second exception to obtain, police officers must show probable cause to believe that, were they to announce their presence, identity, and purpose, the evidence sought would be destroyed. *See Keeter v. Commonwealth*, 222 Va. 134, 141, 278 S.E.2d 841, 846, *cert. denied*, 454 U.S. 1053 (1981)(citing *Johnson v. Commonwealth*, 213 Va. 102, 189 S.E.2d 678 (1972), *cert. denied*, 409 U.S. 1116 (1973)).

The principles that govern warrantless searches also govern " 'no-knock' entries by law enforcement officers armed with search warrants." *Keeter*, 222 Va. at 141, 278 S.E.2d at 845. In order to determine whether police had, at the time of entry, probable cause to believe exigent circumstances mandated a warrantless entry, courts analyze facts on a case-by-case basis. *Id.* at 141, 278 S.E.2d at 846.

In *Keeter*, a case in which police officers made a warrantless entry believing that it was necessary to prevent destruction of evidence, the court held that police had probable cause to conduct a warrantless search. *Id.* at 142, 278 S.E.2d at 846. According to the facts of *Keeter*, prior police surveillance had given officers probable cause to believe that a quantity of narcotics was present inside a certain house. While two officers sat outside the house in an unmarked car, waiting for a third officer to obtain a search warrant, an individual inside the house appeared at a window, looking out. The officers had previously thought the house was empty, two occupants having earlier been seen leaving. They grew concerned that, despite their unmarked car, the individual at the window had identified them. They were also apprehensive about the possibility that the two people who had already left the house would manage to notify the person still inside about police activ-

ity. Acting on a "split-second decision," the officers moved to prevent the destruction of evidence. *Id.* Ruling on these facts, the court in *Keeter* held that the officers who conducted the warrantless search acted not on "mere suspicion" but on "reasonable probability." *Id.*

As in the *Keeter* case, the police in Woody's case had obtained a search warrant supported by affidavits stating that informants with a proven history of reliability had seen heroin and observed its sale at 706 Norwood. One of these informants had seen heroin inside 706 Norwood within the past forty-eight hours. Police had probable cause to believe they would seize illegal narcotics at this address.

The Lynchburg police officers also had probable cause to believe that, as they approached 706 Norwood, they were sighted and identified by an occupant at that address. As police passed by the house of defendant's next-door neighbor, they looked ahead to see an individual standing inside defendant's front door. Their belief that the individual in the doorway had seen them was based on more than mere suspicion; if they could see him, he, in all likelihood, had seen them. Unlike *Keeter*, in which two officers sat outside a house in an unmarked car, the officers here were approaching the premises in a van with its side door open, exposing to plain view the full uniformed officers located therein.

> [O]fficers are not required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight. They must be judged by their reaction to circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter was made.

*Id.* at 141, 278 S.E.2d at 846.

For the foregoing reasons, we hold that the officers had probable cause to believe that their unannounced entry was necessary to prevent the destruction of evidence. The order of the trial court granting the motion to suppress is, therefore, reversed and the matter is remanded for trial.

*Reversed and remanded.*

Koontz, C.J., and Coleman, J., concurred.