COURT OF APPEALS OF VIRGINIA


Present:  Judges Moon,[*] Willis and Elder
Argued at Richmond, Virginia


JOSEPH ALDEN LEWIS
                                            OPINION BY
v.    Record No. 1852-96-2        JUDGE JERE M. H. WILLIS, JR.
                                          DECEMBER 2, 1997
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
                          James A. Luke, Judge

             C. David Whaley (Anthony G. Spencer;
             Morchower, Luxton & Whaley, on briefs), for
             appellant.

             Michael T. Judge, Assistant Attorney General
             (Richard Cullen, Attorney General, on brief),
             for appellee.



     Joseph Alden Lewis was convicted of possession of a

controlled substance, possession of a firearm while in possession

of a controlled substance and possession of a firearm by a

convicted felon.  On appeal, he contends that the trial court

erred in denying his motion to suppress evidence seized from his

home by the police following their forcible entry to execute a

valid search warrant.  Finding no error, we affirm the judgment

of the trial court.

     In reviewing a trial court's denial of a motion to suppress,

we consider the evidence adduced at both the trial and the

suppression hearing, Spivey v. Commonwealth, 23 Va. App. 715,

---

[*]When the case was argued Judge Moon presided.  Judge
Fitzpatrick was elected Chief Judge effective November 19, 1997.
 Judge Moon participated in the hearing and decision of this case
prior to his retirement on November 25, 1997.

721, 479 S.E.2d 543, 546 (1997), and place "[t]he burden [] upon [the appellant] to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error."  Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).

At approximately 5:00 p.m., on June 28, 1995, Officer King of the Prince George County Police Department obtained a warrant to search Lewis' residence in Hopewell for methamphetamine and items associated with its distribution.  King contacted members of the Hopewell Police Department, the Petersburg Police Department and the Virginia State Police to assist in the execution of the warrant.  The officers arrived at Lewis' house at approximately 12:30 a.m. on June 29, 1995.  An officer had driven by Lewis' house about thirty minutes earlier to determine whether Lewis was home and whether any dogs were on the premises.  The officer observed a white pickup truck believed to belong to Lewis, and "thought [he] had seen a dog around the house."  The officers did not know who, if anyone, was at the house.

King, Virginia State Police Special Agents Miers and Riley and at least two uniformed officers approached the front of the house.  At least two other officers approached the rear.  King, Miers and Riley had the words "police" or "State Police" emblazoned on their outer garments.  All three had long hair, and both Miers and Riley were large men with beards.  They wore their badges on chains around their necks or displayed on their outer

clothing.

Through a glass storm door, the officers at the front of the house could see Lewis sitting on a couch, talking on a portable telephone. The interior wooden door was open. The porch light was on and the interior lights allowed them to see into the living room. All of the officers were visible from the front door. King testified that he did not know whether anyone else was in the house at that time.

Miers testified that Riley knocked and announced, "State Police. Search warrant." Miers then repeated, "State Police. Search warrant. Open the door." Lewis stood up and asked, "How do I know it's the police." The officers repeated their identity, purpose and command "[n]umerous times. Five, ten, maybe more." During the exchange between Lewis and the officers on the porch, Miers heard what he believed was a large dog growling. The noise prompted the officers to order Lewis to "Control the dog. Secure the dog." Lewis told the officers that he did not have a dog. The officers determined later that the noise was due to Lewis' heavy breathing through a stoma.

After the passage of between forty to sixty seconds from the initial announcement, Riley struck the door with a battering ram. The door did not open, and Lewis walked toward it. Riley rammed the door again, and Lewis backed up. When Riley rammed the door a third time, it opened. The record is unclear whether Lewis opened the door or the battering ram forced it open.

"[P]rior to forcing entry into a dwelling," police must: "(1) knock; (2) identify themselves as police officers; (3) indicate the reason for their presence; and (4) wait a reasonable period of time for the occupants to answer the door." Gladden v. Commonwealth, 11 Va. App. 595, 598, 400 S.E.2d 791, 793 (1991). "Although the requirement that police officers executing a search warrant 'knock and announce' gives notice to the suspects of the officers' presence and the suspect's possible impending apprehension, it also discourages violence and volatile confrontations and encourages orderly executions of search warrants." Hargrave v. Commonwealth, 21 Va. App. 320, 323, 464 S.E.2d 176, 177 (1995) (citation omitted).

Lewis contends that the officers lacked probable cause to believe that exigent circumstances required a forced entry. He also argues that the forced entry was unreasonable given the lateness of the hour, the physical appearance of the officers, his request for further identification, and his lack of suspicious activity.

A police officer's conduct in executing a search warrant is "judged in terms of its reasonableness within the meaning of the fourth amendment to the United States Constitution and Article I, § 10 of the Constitution of Virginia." Grover v. Commonwealth, 11 Va. App. 143, 145, 396 S.E.2d 863, 864 (1990). See Wilson v. Arkansas, 514 U.S. 927, 931 (1995). Moreover:

> "[O]fficers are not required to possess
> either the gift of prophecy or the infallible
> wisdom that comes only with hindsight. They

- 4 -

> must be judged by their reaction to
> circumstances as they reasonably appeared to
> trained law enforcement officers to exist
> when the decision to enter was made."

Commonwealth v. Woody, 13 Va. App. 168, 171, 409 S.E.2d 170, 172 (1991) (quoting Keeter v. Commonwealth, 222 Va. 134, 141, 278 S.E.2d 841, 846 (1981)).

This case does not involve an unannounced entry by police officers. The officers knocked on the door, repeatedly identified themselves as law enforcement officers, and stated that they had come to execute a search warrant. Therefore, the decision in this case turns upon the final requirement of the announcement doctrine, whether the officers gave Lewis a reasonable opportunity to open the door.

In Wynne v. Commonwealth, 15 Va. App. 763, 427 S.E.2d 228 (1993), several police officers arrived at a residence to execute a warrant to search for drugs. Through the glass storm door, a police officer "saw appellant in the living room trimming a Christmas tree and a man seated at the dining room table." Id. at 764, 427 S.E.2d at 229. After the officer knocked and announced his presence, the appellant did not move and the man in the dining room gave no indication that he heard the officer. Id. After waiting about five seconds, officers entered the residence through the unlocked storm door. Id. at 765, 427 S.E.2d at 229-30. In reversing the conviction, we concluded that the five-second delay was unreasonable under the circumstances and violated the Fourth Amendment. Id. at 767, 427 S.E.2d at

- 5 -

231.

> In so doing, we set no strict time limit for the period of time the police must wait. A myriad of circumstances could confront an officer executing a search warrant. However, the police must allow the occupant of the dwelling to be searched a reasonable opportunity to come to the door and answer the knock, <u>unless exigent circumstances arise or the occupant denies admission</u>.

<u>Id.</u> (emphasis added).

In <u>Hargrave</u>, officers executing a warrant to search for illegal drugs "could see into the house and down the hallway through the glass storm door" and "would be able to observe whether the occupants were reasonably responding to their notice." 21 Va. App. at 324, 464 S.E.2d at 178. Seeing no one, the officers waited two to three seconds after they had knocked and announced their presence and then entered the house. <u>Id.</u> We reversed the conviction, finding that the officers had not waited a reasonable time under the circumstances. However, we noted that:

> [T]he lapse of a reasonable amount of time for occupants to respond after police officers knock and announce their presence may well be an exigent circumstance from which the officers can infer that if occupants are present in the residence, they are not responding for some reason. Thus, although the disposable nature of drugs is not an exigent circumstance that alone justifies a forced entry, <u>the failure of the occupants to respond within a reasonable time after knocking and announcing will justify the use of that degree of force necessary to enter and execute a search warrant</u>.

<u>Id.</u> at 326-27, 464 S.E.2d at 179 (emphasis added).

Acquiescence to the command of a search warrant is not discretionary. Police officers attempting execution of a valid warrant need not coax compliance from an unwilling or unresponding party. <u>See</u> Code § 19.2-56. Following the requisite "knock and announcement," the failure of an occupant to admit law enforcement officers after a reasonable opportunity to do so is tantamount to a refusal and justifies forcible entry.

We agree with the trial court's finding that the officers gave Lewis a reasonable opportunity to admit them. Forty to sixty seconds elapsed from the time the officers "knocked and announced" to their use of the battering ram. <u>Cf.</u> <u>Wynne</u>, 15 Va. App. at 767, 427 S.E.2d at 231; <u>Hargrave</u>, 21 Va. App. at 327, 464 S.E.2d at 179. The officers announced that they were police officers. They wore appropriate markings, badges and uniforms identifying them as such. Lewis was awake and saw them. He failed to cooperate and made no attempt to unlock the door until the officers employed the ram.

Lewis was granted ample opportunity to surrender his privacy voluntarily. He failed to do so, and the officers properly considered his non-cooperation a refusal to permit their entry. Accordingly, the officers acted reasonably in forcing the door open.

Furthermore, the officers faced unknown and possibly dangerous circumstances. They sought methamphetamine, a

- 7 -

controlled substance.  King testified that the amount discovered could have been disposed of with a single toilet flush.  The mere fact that drugs are easily disposed of does not by itself justify a forced entry.  See Hargrave, 21 Va. App. at 326-27, 464 S.E.2d at 179.  However, the longer an occupant denies admittance, the greater the need to enter the premises to prevent the destruction of evidence.  See id.

Society's interest in the safety of police officers when they are "conducting [their] duties is of paramount importance."  Harris v. Commonwealth, 241 Va. 146, 151, 400 S.E.2d 191, 194 (1991).  The officers did not know whether anyone else was in the house.  They were exposed to unknown perils while they waited outside.  Furthermore, they heard a "growl," described as coming from "a large, unhappy dog."  See Carratt v. Commonwealth, 215 Va. 55, 58, 205 S.E.2d 653, 655 (1974).  The potential danger to the officers heightened their need to gain immediate access to Lewis' house and to secure the premises.

The judgment of the trial court is affirmed.

Affirmed.