COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Lemons and Frank
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                        MEMORANDUM OPINION* BY
v.    Record No. 0451-99-1             JUDGE DONALD W. LEMONS
                                              JULY 6, 1999
JOSEPH LEE DOLMOVICH


           FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                       Verbena M. Askew, Judge

              H. Elizabeth Shaffer, Assistant Attorney
              General (Mark L. Earley, Attorney General, on
              brief), for appellant.

              Theophlise Twitty for appellee.


     By order dated January 25, 1999, the Circuit Court for the

City of Newport News granted Joseph Lee Dolmovich's motion to

suppress evidence seized after the execution of a search

warrant.  The Commonwealth appeals the court's ruling, arguing

that the court utilized the wrong test in suppressing the

evidence.  We agree with the Commonwealth, and we reverse the

court's order suppressing the evidence, and remand for further

proceedings.

                         I.  BACKGROUND

     On February 13, 1998, members of the Vice and Narcotics

Unit of the Newport News Police Department obtained a search

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

warrant for the premises of Apartment A at 3502 1/2 Washington Avenue.  Apartment A is located on the second floor of the building, facing the street, with windows visible from the street.  The sidewalk is "under" the windows.  Detective J.W. Holloway testified that "[t]his area of 35th and the Washington Avenue area, we regularly have problems with narcotics, and by that I mean dealing with narcotics."  The warrant was obtained on the basis of a confidential reliable informant to search for crack cocaine.  Ralph Kelley, the lessee of the apartment, was the "target" of the search.

Holloway was the assigned case agent for the search.  Prior to the execution of the warrant, Holloway informed the Vice and Narcotics Unit to "knock and announce" their presence before entering Apartment A.  The unit split into two groups - one in a gray police van, and the other in a detective's vehicle - and met at a "staging location."  While waiting at the staging location, the informant relayed to Holloway and the unit that people were inside Apartment A.

As the police van turned onto Washington Avenue, several people walking on the street directly in front of Apartment A began to yell "Police" and "Vice."  When the unit exited the two vehicles, they were wearing "black and gray police vests [and] blue badges of authority on the chest," although a "couple of the officers who were doing their internship were wearing regular street vests, badges" and black hats with "Police" in

white lettering.  Holloway testified that this type of yelling by onlookers is not uncommon in the execution of a search warrant with the vice unit.

Detective T.D. Stephenson, assigned as a "ram officer" whose task it was to force the door open if necessary, was the first officer to exit the van.  When Stephenson stepped out of the van, he heard a commotion on the street, looked upward and saw that three apartment windows were open and the lights were on inside the apartment.  Other vice officers were attempting to clear away the crowd in front of Stephenson on the sidewalk.  Stephenson observed a number of persons on the sidewalk, some leaving a nightclub, and some who ran from and some who ran toward the door of the apartment building.  Other people on the street were yelling "Vice."  Stephenson ran up the steps and used the ram to force open the door.  Sergeant David Seals followed him inside and, based on his observations, arrested Dolmovich for possession of cocaine.

On September 16, 1998, Dolmovich filed a motion to suppress any and all evidence which "resulted from the unlawful statements taken from the defendant at the time of his arrest in that the statements were in violation of defendant's Fifth Amendment Rights . . . ."  A hearing was held on the motion on September 28, 1998.  By order dated January 25, 1999, the trial court granted Dolmovich's motion to suppress, stating "the search of the dwelling violated the Fourth Amendment of the

Constitution of the United States."  Although the trial court granted the motion on grounds other than those addressed by the defendant, we will review the Fourth Amendment issue raised by the trial court ruling.

## II.  "KNOCK AND ANNOUNCE" REQUIREMENT

"The Commonwealth may seek an interlocutory appeal of a trial court's order which suppresses evidence on the grounds that it has been obtained in violation of the provisions of the Fourth, Fifth or Sixth Amendments to the Constitution of the United States or Article I, Sections 8, 10 or 11 of the Constitution of Virginia."  Commonwealth v. Rice, 28 Va. App. 374, 377, 504 S.E.2d 877, 878 (1998); see Code § 19.2-398.  On appeal, this Court considers "the evidence in the light most favorable to the prevailing party below, and the decision will not be disturbed on appeal unless it is plainly wrong or without evidence to support it."  Commonwealth v. Thomas, 23 Va. App. 598, 609, 478 S.E.2d 715, 720 (1996).  However, "[u]ltimate questions of reasonable suspicion and probable cause . . . involve questions of both law and fact and are reviewed de novo on appeal."  McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (citations omitted).

Citing Lewis v. Commonwealth, 26 Va. App. 113, 117, 493 S.E.2d 397, 399 (1997), the trial court stated that prior to forced entry of a building, a police officer executing a search warrant must:  "(1) knock; (2) identify themselves as police

officers; (3) indicate the reason for their presence; and (4) wait a reasonable period of time for the occupants to answer the door."  The court also stated, "[o]nly two exceptions [to the "knock and announce" rule] exist which allow an officer to make an unannounced entry:  '(1) where the officers have probable cause to believe that their peril would be increased if they announced their presence or (2) when officers have probable cause to believe that an unannounced entry is necessary to prevent persons within from escaping or destroying evidence.'" Commonwealth v. Woody, 13 Va. App. 168, 170, 409 S.E.2d 170, 171 (1991).  The court found that the "[t]he record fail[ed] to support such exceptional circumstances in this case" because "there was no testimony by the officers that they had probable cause to believe that by identifying themselves, they would be increasing their peril."

In Richards v. Wisconsin, 520 U.S. 385 (1997), the United States Supreme Court articulated a "reasonable suspicion" standard to justify a no-knock entry into a building.  The Court held,

> [i]n order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.  This standard - as opposed to a probable cause requirement - strikes the appropriate balance between the legitimate law

enforcement concerns at issue in the
execution of search warrants and the
individual privacy interests affected by
no-knock entries.  This showing is not high,
but the police should be required to make it
whenever the reasonableness of a no-knock
entry is challenged.

Id. at 394-95 (citations omitted).  See also United States v.

Grogins, 163 F.3d 795 (1998) (following Richards, where police

officers had reasonable suspicion that their safety was at risk,

they were not required to "knock and announce" before entry into

building).

In Woody we cited Keeter v. Commonwealth, 222 Va. 134, 141,

278 S.E.2d 841, 846, cert. denied, 454 U.S. 1053 (1981), and

Johnson v. Commonwealth,[1] 213 Va. 102, 189 S.E.2d 678 (1972),

cert. denied, 409 U.S. 1116 (1973), as support for the "probable

cause" requirement.  Keeter and Johnson relied upon United

States Supreme Court decisions in Miller v. United States, 357

---

[1] Johnson referred to "reasonable cause" when it favorably
cited People v. Maddox, 294 P.2d 6, 9, cert. denied, 352 U.S.
858 (1956):

> "[W]hen an officer has reasonable cause
> to enter a dwelling to make an arrest and as
> an incident to that arrest is authorized to
> make a reasonable search, his entry and his
> search are not unreasonable.  Suspects have
> no constitutional right to destroy or
> dispose of evidence, and no basic
> constitutional guarantees are violated
> because an officer succeeds in getting to a
> place where he is entitled to be more
> quickly than he would, had he complied with
> [the statute]."

213 Va. at 105, 189 S.E.2d at 680.

U.S. 301 (1958), and Ker v. California, 374 U.S. 23 (1962).

Neither Miller nor Ker involved no-knock entry upon execution of a search warrant. Ending any confusion that may have existed, the United States Supreme Court in Richards clearly announced the "reasonable suspicion" standard for justification of a no-knock entry in the execution of a search warrant.

Dolmovich filed a motion to suppress evidence "taken . . . at the time of his arrest . . . in violation of [his] Fifth Amendment Rights . . ." arguing that the illegal "no-knock" entry invalidated the search and rendered all evidence seized within "fruits of the poisonous tree."  Despite Dolmovich's reliance on the Fifth Amendment for the alleged violation, the trial court resolved the matter on the basis of the Fourth Amendment of the United States Constitution.

The trial judge stated,

> The Court is of the opinion that it is not
> bound to follow the less stringent standard
> adopted by the federal courts. . . .  In
> this area, Virginia has chosen to adopt
> rules which provide greater protections to
> the citizen than what is afforded under
> Federal law.

The United States Supreme Court's interpretation of federal constitutional provisions is binding on the states.  In Arizona v. Evans, 514 U.S. 1 (1995), the Court stated,

> [s]tate courts are absolutely free to
> interpret state constitutional provisions to
> accord greater protection to individual
> rights than do similar provisions of the
> United States Constitution.  They are also

> free to serve as experimental laboratories, in the sense that Justice Brandeis used that term in his dissenting opinion in New State Ice Co. v. Liebmann, 285 U.S. 262, 311 (1932). . . . State courts, in appropriate cases, are not merely free to — they are bound to – interpret the United States Constitution. In doing so, they are not free from the final authority of [the United States Supreme] Court.

Id. at 8-9.

"[S]tate courts will not be the final arbiters of the important issues under the federal Constitution." Minnesota v. National Tea Co., 309 U.S. 551, 557 (1940); see also Taylor v. Commonwealth, 26 Va. App. 485, 501 n.10, 495 S.E.2d 522, 538 n.10 (1998) ("[w]e are bound by the decisions of the United States Supreme Court with regard to interpretation of the federal constitution" (citations omitted)) (Benton, J. concurring).

A state can apply stricter standards by interpretations of its own Constitution or by statute, see Penn v. Commonwealth, 13 Va. App. 399, 412 S.E.2d 189 (1991), but states are bound by the United States Supreme Court's interpretation of the United States Constitution. Pursuant to Richards, the trial court was required to apply the standard of "reasonable suspicion" to justify a "no-knock" search. We hold that the trial court erred in applying a "probable cause" standard to justify a "no-knock" search in the execution of a search warrant.

III.  REASONABLENESS OF ENTRY

Under Ornelas v. United States, 517 U.S. 690 (1996), and

McGee, 25 Va. App. 193, 487 S.E.2d 259, we are bound by the

trial judge's findings of historical fact, but we review mixed

questions of law and fact de novo on appeal.  In applying this

standard, we find that it was reasonable for the officers to

believe that evidence might be destroyed if they had knocked and

announced their presence.

A review of the record reveals that the officers intended

to knock and announce prior to their entry into the apartment.

However, due to changed circumstances that they found upon their

arrival, they decided that a "no-knock" entry was necessary to

prevent the destruction of evidence.  In Richards, the United

States Supreme Court rejected a "blanket exception" to the knock

and announce requirement in cases where drugs are the target of

the search, stating "it is the duty of a court confronted with

the question to determine whether the facts and circumstances of

the particular entry justified dispensing with the

knock-and-announce requirement."  Richards, 520 U.S. at 394.

A review of the record reveals that a confidential

informant told the officers that people were present in the

apartment at the moment they left the staging location to

execute the warrant.  The apartment was located on the second

floor.  The sidewalk was directly under the windows, indicating

close proximity.  The lights were on inside the apartment.  The

windows were open.  There were a number of people on the sidewalk, directly in front of the open windows of the apartment, yelling "Vice."

Under the standard articulated by the Supreme Court in Richards, the "showing [of reasonableness] is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged."  Id. at 394-95.  In the case before us, we find that the police made the requisite showing of reasonableness.  The motion to suppress should have been denied. We reverse the order suppressing the evidence and remand for further proceedings consistent with this opinion.

Reversed and remanded.