COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bumgardner and Senior Judge Overton
Argued at Richmond, Virginia


DERRICK GEORGE HENRY
                                            OPINION BY
v.    Record No. 0957-99-2           JUDGE NELSON T. OVERTON
                                            JUNE 13, 2000
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                       Robert W. Duling, Judge

              John F. McGarvey for appellant.

              Marla Graff Decker, Assistant Attorney
              General (Mark L. Earley, Attorney General;
              Jeffrey S. Shapiro, Assistant Attorney
              General, on brief), for appellee.


     Appellant, Derrick George Henry, was convicted of

possession of cocaine with intent to distribute, in violation of

Code § 18.2-248.  On appeal, he contends the trial court erred

in refusing to suppress evidence seized during execution of a

search warrant.  Finding no error, we affirm.

                            BACKGROUND

     "In reviewing a trial court's denial of a motion to

suppress, 'the burden is upon [the defendant] to show that the

ruling, when the evidence is considered most favorably to the

Commonwealth, constituted reversible error.'"  McGee v.

Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997)

(en banc) (citation omitted).  While we are bound to review de

_novo_ the ultimate questions of reasonable suspicion and probable cause, we "review findings of historical fact only for clear error[1] and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added).

The evidence proved that on the afternoon of February 12, 1997, five police officers proceeded to appellant's apartment to execute a search warrant. Before the officers approached the residence, Officer Shapiro, who was in a surveillance vehicle, saw appellant and another male arrive by car, park, take a black bag out of the trunk, and enter the apartment. Fifteen minutes later, the other male left, at which time the police decided to execute the search warrant.

Four of the officers prepared to enter through the front door, and the fifth, Sergeant Russell, was to guard the rear of the apartment to prevent anyone from escaping out of a rear window. As the officers approached the front door, they saw two men, Manuel and Hawkins. Manuel was on the front porch, and Hawkins was exiting from the front door.

Officer Rogers testified that Manuel was "coming off the porch . . . [and] trying to exit towards the street." Rogers

---

[1] "In Virginia, questions of fact are binding on appeal unless 'plainly wrong.'" McGee, 25 Va. App. at 198 n.1, 487 S.E.2d at 261 n.1 (citations omitted).

pursued and apprehended Manuel. Russell assisted him, leaving no one to prevent occupants in the apartment from fleeing out of the rear window.

Hawkins exited and was closing the front door behind him when Officer Shapiro approached. Shapiro was "number one in line" and was supposed to ram the front door, if necessary. Shapiro and other officers "started announcing" their identity and purpose as Hawkins exited. Shapiro did not try to apprehend Hawkins. Two seconds after Hawkins closed the door, Shapiro turned the knob and found that the door was unlocked. He opened the door and entered, yelling, "search warrant, police, everybody down." Officer Capelli followed Shapiro into the house a few seconds later and repeatedly yelled his identity and purpose. After entering the apartment, Shapiro located and arrested appellant.

Upon seeing Manuel on the porch and Hawkins leaving through the front door, Officer Payne "immediately attempted to stop [Hawkins]." She shouted numerous times for Hawkins to come off the porch and "get to the ground," but he refused. A struggle ensued in the front yard of the house, and "[i]t took [several] officers to get [Hawkins] down." Payne testified that the noise outside was so loud that officers in a marked unit a block or two away "heard us yelling" and "came to our assistance." Other officers assisted Payne in eventually subduing Hawkins.

In a pretrial motion to suppress the evidence seized in the search of the residence, appellant claimed the officers violated his Fourth Amendment right against unreasonable searches and seizures by failing to knock and announce their presence. The trial court denied the motion, finding that exigent circumstances justified the decision to enter the residence unannounced. This appeal followed.

LEGAL STANDARD

The validity of a search under the authority of a valid search warrant is "'judged in terms of its reasonableness within the meaning of the fourth amendment to the United States Constitution and Article I, § 10 of the Constitution of Virginia.'" Lewis v. Commonwealth, 26 Va. App. 113, 117, 493 S.E.2d 397, 399 (1997) (quoting Grover v. Commonwealth, 11 Va. App. 143, 145, 396 S.E.2d 863, 864 (1990)). "Our courts have consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution." Bennefield v. Commonwealth, 21 Va. App. 729, 739-40, 467 S.E.2d 306, 311 (1996); see also Lowe v. Commonwealth, 230 Va. 346, 348 n.1, 337 S.E.2d 273, 275 n.1 (1985) (explaining that protections under Virginia's Constitution and statutes are "substantially the same as those contained in the Fourth Amendment"); Janis v. Commonwealth, 22 Va. App. 646, 650-51, 472 S.E.2d 649, 652 (1996) (holding same); Turner v. Commonwealth, 14 Va. App. 737, 743, 420 S.E.2d 235, 239 (1992) (explaining that search and seizure protections are coextensive

with federal constitutional protections); <u>Simmons v. Commonwealth</u>, 6 Va. App. 445, 451 n.2, 371 S.E.2d 7, 10 n.2 (1988) (holding that, if traffic checkpoint survives Fourth Amendment scrutiny, it is constitutional under Article I, § 10 of Virginia's Constitution), <u>rev'd on other grounds</u>, 238 Va. 200, 380 S.E.2d 656 (1989).

Generally, police executing a search warrant must "'(1) knock; (2) identify themselves as police officers; (3) indicate the purpose for their presence; and (4) wait a reasonable time for the occupants to answer the door'" before entering a residence.  <u>Lewis</u>, 26 Va. App. at 117, 493 S.E.2d at 399 (quoting <u>Gladden v. Commonwealth</u>, 11 Va. App. 595, 598, 400 S.E.2d 791, 793 (1991)).  In <u>Commonwealth v. Woody</u>, 13 Va. App. 168, 170, 409 S.E.2d 170, 171 (1991), we noted two exceptions to this rule allowing for unannounced entries:  "(1) when officers 'have probable cause to believe that their peril would be increased if they announced their presence' or (2) when officers have probable cause to believe 'that an unannounced entry is necessary to prevent persons within from escaping or destroying evidence.'"  <u>Id.</u> at 170, 409 S.E.2d at 171 (quoting <u>Heaton v. Commonwealth</u>, 215 Va. 137, 138, 207 S.E.2d 829, 830 (1974); also citing <u>Keeter v. Commonwealth</u>, 222 Va. 134, 141, 278 S.E.2d 841, 846 (1981)).

Relying on <u>Heaton</u> and <u>Keeter</u> and citing <u>Woody</u>, we again applied the probable cause standard in reviewing the

reasonableness of an unannounced entry in <u>Spivey v. Commonwealth</u>, 23 Va. App. 715, 722, 479 S.E.2d 543, 547 (1997). Four months after our decision in <u>Spivey</u>, the United States Supreme Court decided a case involving exceptions to the knock-and-announce rule.  See <u>Richards v. Wisconsin</u>, 520 U.S. 385 (1997).  In <u>Richards</u>, the Supreme Court held that "[i]n order to justify a 'no-knock' entry, the police must have <u>a reasonable suspicion</u> that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime."  <u>Id.</u> at 394 (emphasis added).

Because the protections afforded under Virginia's Constitution are coextensive with those contained in the Fourth Amendment, we apply the legal standard adopted by the United States Supreme Court in interpreting the Fourth Amendment and determining cases thereunder.  Therefore, in analyzing the applicability of an exception to the "knock and announce" requirement, we hold that the "reasonable suspicion" standard adopted in <u>Richards</u> is the proper legal standard.  Accordingly, we no longer follow the stricter "probable cause" standard applied in <u>Woody</u> and its progeny, including <u>Spivey</u>.

ANALYSIS

The evidence established that the approaching officers, armed with a valid search warrant, saw two individuals in the front of appellant's residence.  One individual, Manuel, stood on the porch, while the other, Hawkins, closed the front door.  At that moment, the approaching officers repeatedly announced their identity and purpose and ordered the men to submit to the officers' authority.  Manuel fled and Hawkins resisted orders to come off the porch and lie down on the ground, creating a great deal of noise and confusion and requiring most of the executing officers to subdue them.  The remaining officers opened the unlocked door, identified themselves as police officers with a search warrant and entered the residence.

Based on the loud disturbance taking place in front of appellant's residence and the fact that three of the five officers were involved in apprehending two recalcitrant suspects outside the premises to be searched, we find the Commonwealth sufficiently established that the officers had a reasonable suspicion that knocking and announcing their presence would be dangerous or futile.  Accordingly, we find the trial court did not err in refusing to suppress the evidence, and we affirm the conviction.

<u>Affirmed</u>.