## CIRCUIT COURT OF SOUTHAMPTON COUNTY

Commonwealth of Virginia

v.

Patricia Hoverstadt

September 15, 2000

Case No. CR99-373

BY JUDGE D. ARTHUR KELSEY

The Commonwealth accuses Patricia Hoverstadt of possession of cocaine in violation of Va. Code Ann. § 18.2-250 (Michie 1996 & Supp. 2000). In her pretrial motion to suppress, Hoverstadt claims the Commonwealth collected physical evidence against her in violation of the Fourth Amendment to the United States Constitution and Virginia statutory law. *See* Defendant's Motion to Suppress (July 26, 2000); Hearing Transcript at 6-9, 77-90 (Aug. 31, 2000). For the following reasons, the Court denies the motion.

On September 13, 1998, officers of the Franklin Police Department hired a confidential informant ("CI") to attempt to make a "controlled buy" of crack cocaine from Hoverstadt. *See* Hearing Transcript at 10-13 (Aug. 31, 2000).[1]

---

[1] The Court's findings of fact rest primarily on the testimony of Officer Kevin Johnakin and Detective Michael Darden. For purposes of the suppression hearing,

After being personally searched by police to assure the absence of contraband, the CI contacted Hoverstadt seeking to make a purchase of cocaine. *Id.* at 10-13, 45-46. Officer Kevin Johnakin placed a "body wire" on the CI that would transmit to the police listening nearby all conversations between the CI and Hoverstadt. *Id.*

Hoverstadt agreed to supply the cocaine and asked the CI to accompany her to pick the drugs up from a local supplier. *Id.* at 13-14, 31-32, 46. After obtaining crack cocaine from this unidentified supplier, Hoverstadt and the CI returned to Hoverstadt's home. *Id.* at 14-15, 46-47, 65, 74-75. While there, the CI asked for his share of the cocaine. *Id.* Hoverstadt became suspicious and demanded that the CI smoke some of the crack cocaine to demonstrate that he was not "a police officer" or "working for the police." *Id.* at 15, 53. When the CI showed some reluctance, Hoverstadt pulled up the CI's shirt and discovered the body wire taped to his chest. *Id.* at 15, 47, 65. At that point, Hoverstadt let out a loud scream. *Id.*

Officer Johnakin had taken up a position about a block away. Listening to the conversation over the wire, Johnakin heard Hoverstadt's scream. He immediately went to Hoverstadt's home and found the CI running away from the residence. *Id.* at 14-15. Upon questioning, the CI confirmed that Hoverstadt had obtained cocaine and had put it in a "small ziplock bag" in the bathroom of her home. *Id.* at 16, 55. Johnakin, later joined by other officers, arrested Hoverstadt after she exited the side door of her home. *Id.* at 14-16.

Finding no cocaine on Hoverstadt, Officer Johnakin hurried to a local magistrate to obtain a search warrant for Hoverstadt's home. *Id.* at 17. Johnakin presented testimony under oath to the magistrate, as well as a sworn affidavit outlining the circumstances of the failed sting. *Id.* at 17-19, 37. The affidavit specifically stated that the officer heard the CI ask for his share of the cocaine from Hoverstadt upon their return to her home and that the CI physically saw the cocaine. *See* Commonwealth Exhibit 1 (Sept. 13, 1998). The affidavit also mentioned Hoverstadt's request that the CI smoke the cocaine to prove he was not a police informant. *Id.* The affidavit also disclosed that Officer Johnakin was assigned to a multi-jurisdiction drug interdiction task force and his experience included about three hundred narcotics cases. *See* Commonwealth Ex. 1 (Sept. 13, 1998). In addition, Officer Johnakin testified orally that the sting involved an "ongoing situation" that had "just happened" that day. *See* Hearing Transcript at 19.

---

Hoverstadt concedes that she does not "attack the credibility of the officers," but rather views the dispute as simply "a legal argument." Hearing Transcript at 77 (Aug. 31, 2000).

While Johnakin sought the issuance of the search warrant, other officers kept Hoverstadt in custody in the living room of her home. Officer Michael Darden visually checked each room of the house to determine whether anyone was present who could pose a safety risk to either himself, the other officers, or the suspect. *See* Hearing Transcript at 35, 47-49. Darden, however, spent about a minute or two conducting this inspection and limited it solely to determining whether others were present. *Id.* He did not search the home for contraband, nor did he see any. *Id.* at 36-37, 43, 48-49.

Meanwhile, the magistrate found probable cause existed and issued a search warrant based upon Johnakin's affidavit and oral testimony. *Id.* at 19. The magistrate provided Johnakin with the executed search warrant at 8:25 p.m. but did not attach to the warrant a copy of the affidavit. *Id.* at 19-20. Johnakin returned to Hoverstadt's home with the warrant and searched the home thoroughly. *Id.* at 20-28. He found in the bathroom a "ziplock bag" of crack cocaine, along with thirty-seven similar (but empty) bags and two razor blades. *Id.* Hoverstadt had used that bathroom, the CI testified, shortly before she announced her suspicions of the CI's true intentions. *Id.* at 62, 65-68, 75-76.

Hoverstadt makes two arguments in support of her suppression motion. First, she contends that the magistrate had insufficient factual information to justify the issuance of the search warrant thereby violating the probable cause requirement of the Fourth Amendment.[2] Second, she argues that the magistrate's failure to attach the affidavit to the warrant (so they could be served together) renders the search illegal in violation of both the Fourth Amendment and Virginia statutory law.

"Evidence obtained in violation of the Fourth Amendment," Hoverstadt points out, "is inadmissible in a criminal prosecution for a charged criminal violation pertaining to the seized evidence." *Anderson v. Commonwealth*, 20 Va. App. 361, 363, 457 S.E.2d 396, 397 (1995), *aff'd*, 251 Va. 437, 470 S.E.2d 862 (1996). She likewise notes that, under Virginia law, a "person aggrieved by an allegedly unlawful search or seizure may move the court to return any seized property and to suppress it for use as evidence." Va. Code Ann. § 19.2-60 (Michie 2000).

Hoverstadt's first argument requires an examination of basic principles of probable cause, the essential requirement for the issuance of any search

---

[2] To the extent the defendant invokes constitutional guarantees arising under Article I, § 10, of the Virginia Constitution, the state law analysis tracks the federal law interpreting the Fourth Amendment of the U.S. Constitution. *See Henry v. Commonwealth*, 32 Va. App. 547, 551, 529 S.E.2d 796, 798 (2000).

warrant consistent with the Fourth Amendment. "[N]o warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. Const., Amend. IV. *See Lester v. Commonwealth*, 30 Va. App. 495, 500, 518 S.E.2d 318, 320 (1999); *Gwinn v. Commonwealth*, 16 Va. App. 972, 974, 434 S.E.2d 901, 903 (1993). "Probable cause, as the very name implies, deals with probabilities. These are not technical; they are the factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act." *Derr v. Commonwealth*, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991) (citation omitted). "Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed." *Id.* In determining whether the affidavits are sufficient, courts "must look to the totality of the circumstances." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)).

Probable cause is a "flexible, common-sense standard," one that does not "demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (citations and internal quotation marks omitted). "A practical, nontechnical probability that incriminating evidence is involved is all that is required." *Id.* In other words, the process "does not deal with hard certainties, but with probabilities." *Id.* "Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same — and so are law enforcement officers." *Id.*

Given the fluid nature of the probable cause concept, both the U.S. Supreme Court and the Virginia Supreme Court have rejected "a hypertechnical, rigid, and legalistic analysis" of probable cause. *Illinois*, 462 U.S. at 238-39; *Derr*, 242 Va. at 421, 410 S.E.2d at 666. Under this "common sense" approach, the magistrate's task:

> is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . [concluding]" that probable cause existed.

*Id.* (citations omitted).

An "after-the-fact review of a magistrate's decision should not be made de novo," and thus, "great deference should be given to the magistrate's finding of probable cause." *Derr*, 242 Va. at 421, 410 S.E.2d at 666; *see also Illinois*, 462 U.S. at 236; *Garza v. Commonwealth*, 228 Va. 559, 563, 323 S.E.2d 127, 129 (1984). And for good reason: a "grudging or negative attitude" by the courts directly conflicts with the Fourth Amendment's "strong preference" for searches conducted pursuant to a warrant. *Id.*; *see also United States v. Ventresca*, 380 U.S. 102, 108-09 (1965). As a result, "the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is *less than* that for warrantless searches." Ronald J. Bacigal, *Virginia Criminal Procedure* § 4-17, at 85 (4th ed. 1999) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)) (emphasis added).

Given the totality of the circumstances, probable cause existed for the issuance of the search warrant in this case. The police investigation outlined in the search affidavit showed a sufficient likelihood that Hoverstadt possessed cocaine. To be sure, the affidavit included more than adequate information to link directly Hoverstadt to the crack cocaine. The CI had personally seen her possess the cocaine. They had driven together to obtain it from a local dealer. As Officer Johnakin overheard, the CI asked Hoverstadt for his share and was asked in reply that he smoke some of it to prove his criminal credentials. Finally, Hoverstadt confirmed her suspicions by pulling up the CI's shirt to locate the body wire. Upon these facts, the existence of probable cause cannot fairly be questioned.

Hoverstadt contends that the affidavit did not mention that the described events had taken place *that day*. This argument, however, ignores the fact that Officer Johnakin provided this information to the magistrate through sworn oral testimony. Under settled law, "the Fourth Amendment does not require that the sworn statement upon which the magistrate relies in determining probable cause, be reduced to writing." *Derr*, 242 Va. at 420, 410 S.E.2d at 665; *see also United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994) (Wilkinson, C.J.) ("magistrates may consider sworn, unrecorded oral testimony in making probable cause determinations during warrant proceedings"); *McCary v. Commonwealth*, 228 Va. 219, 231, 321 S.E.2d 637, 643 (1984) ("Thus, an insufficient affidavit may be supplemented or rehabilitated by information disclosed to the issuing magistrate upon application for the search warrant.").

Hoverstadt's second argument focuses on the magistrate's failure to attach the affidavit to the search warrant so that both could be served together. As she puts it:

> That's a constitutional issue, and I think that it requires that — it's our position that the affidavit ought to have certain information and ought to be served together with the warrant as required by statute, and that that is a requirement of constitutional magnitude. . . . And I would say simply the Fourth Amendment requires it of the police to protect people in their houses.

Transcript at 83, 85. Hoverstadt's view, however, finds no support either from the literal text or the historical context of the Constitution. The Fourth Amendment condemns "unreasonable searches and seizures" and makes clear that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., Amend. IV. No legal principle, at least of a constitutional magnitude, requires the affidavit to be served simultaneously with the search warrant.

To find in the Fourth Amendment, as Hoverstadt asks this Court to do, a specific requirement that the warrant be accompanied by the affidavit "proceeds on the erroneous and all-too-common assumption that the Constitution means what we think it ought to mean. It does not; it means what it says." *Apprendi v. New Jersey*, 530 U.S. ___, 120 S. Ct. 2348, 2367 (2000) (Scalia, J., concurring). The authority of the judiciary and the legitimacy of its pronouncements require, at a minimum, that the Constitutional text be faithfully applied. Embellishments to the text, even if considered improvements to it, incrementally undermine the democratic process by arrogating a law-making power to the judiciary that the Constitution itself has reserved solely for the legislative branch of government.

Hoverstadt's argument must rise or fall entirely on state law. By statute, Virginia magistrates "authorized to issue criminal warrants *shall* attach a copy of the affidavit required by § 19.2-54, which shall become a part of the search warrant and served therewith." Va. Code Ann. § 19.2-56 (Michie 2000) (emphasis added). This statute clearly places upon the magistrate, as Hoverstadt correctly points out, the duty to attach the affidavit to the warrant. The question remains, however, whether a violation of this duty requires that all evidence recovered pursuant to the warrant be suppressed.[3] For two reasons, the suppression remedy ill fits the magistrate's error.

---

[3] The Virginia Court of Appeals has not addressed this issue directly. *See Turner v. Commonwealth*, 14 Va. App. 737, 748, 420 S.E.2d 235, 242 (1992) ("Because we hold that the officers complied with the directory component of Code § 19.2-56 and with the constitutional continuing probable cause requirement, we leave for

First, mere statutory violations generally do not trigger the exclusionary rule. A "judicial creation" meant to enforce constitutional rights, the exclusionary rule seeks to "deter police misconduct," not to remedy procedural or technical errors committed in good faith by magistrates and law enforcement officers. *Moyer v. Commonwealth*, 33 Va. App. 8, 24, 531 S.E.2d 580, 588 (2000) (*en banc*) (citation omitted). For analogous reasons, the Virginia Supreme Court has "steadfastly refused to extend that rule to encompass evidence seized pursuant to statutory violations, absent an express statutory provision for suppression." *Weaver v. Commonwealth*, 29 Va. App. 487, 492, 513 S.E.2d 423, 426 (1999) (quoting *Janis v. Commonwealth*, 22 Va. App. 646, 651, 472 S.E.2d 649, 652, *aff'd* on reh'g *en banc* 23 Va. App. 696, 479 S.E.2d 53 (1996), and *Troncoso v. Commonwealth*, 12 Va. App. 942, 944, 407 S.E.2d 349, 350 (1991)). *See also Horne v. Commonwealth*, 230 Va. 512, 519, 339 S.E.2d 186, 191 (1986); *Taylor v. Commonwealth*, 28 Va. App. 638, 641, 507 S.E.2d 661, 663 (1998); *West v. Commonwealth*, 16 Va. App. 679, 692, 432 S.E.2d 730, 738 (1993); *Hatcher v. Commonwealth*, 14 Va. App. 487, 493, 419 S.E.2d 256, 260 (1992); *Thompson v. Commonwealth*, 10 Va. App. 117, 122, 390 S.E.2d 198, 201 (1990). Because § 19.2-56 contains no express suppression remedy, the Court has no legal basis to extrapolate one from an otherwise silent statutory text.[4]

Second, as the Virginia Supreme Court has explained, the "use of shall in a statute requiring action by a public official, is directory and not mandatory unless the statute manifests a contrary intent." *Commonwealth v. Wilks*, 260 Va. 194, 199, 530 S.E.2d 665, 667 (2000) (quoting *Jamborsky v. Baskins*, 247 Va. 506, 511, 442 S.E.2d 636, 638 (1994)); *see also Abraham v. Commonwealth*, 32 Va. App. 22, 29-30, 526 S.E.2d 277, 280-81 (2000); *Caccioppo v. Commonwealth*, 20 Va. App. 534, 537, 458 S.E.2d 592, 594 (1995). Violations of such procedural commands do not void judicial proceedings. *Id.* For example, in *Commonwealth v. Rafferty*, 241 Va. 319, 402

---

another day whether a statutory violation, without a constitutional one, requires suppression of the evidence obtained as a result of the violation.").

[4] *See generally* 2 Wayne R. LaFave, *Search & Seizure*, § 4.12, at 717 (3d ed. 1996) ("By statute or court rule, many jurisdictions have imposed requirements upon the execution of search warrants . . . . Generally, it may be said that these requirements are not deemed to flow so directly from the Fourth Amendment's proscription upon unreasonable searches that failure to abide by them compels exclusion of evidence obtained in execution of a search warrant. Indeed, it is not uncommon for the provisions setting forth these requirements to be characterized as merely directory or ministerial in character, so that violation of them does not even call for exclusion under local law.").

S.E.2d 17 (1991), the court considered a statute stating that a certificate of refusal to take an alcohol test "shall be attached to the warrant." Despite finding a clear violation, the court held that the procedural error had no effect on the legality of the warrant. In other words, "precise compliance is not to be deemed essential to the validity of the proceedings, unless so declared by statute." *Rafferty*, 241 Va. at 324-25, 402 S.E.2d at 20.[5]

Even if Hoverstadt could demonstrate a *prima facie* legal basis for the application of the exclusionary rule, its use in this case would be both unwise and unjustifiable. Virginia has "embraced and applied the good faith exception to the exclusionary rule." *Moyer*, 33 Va. App. at 24, 531 S.E.2d at 588 (quoting *Polston v. Commonwealth*, 255 Va. 500, 503, 498 S.E.2d 924, 926 (1998)). Under this exception, "evidence illegally seized is admissible if the officer conducting the search reasonably relied on a search warrant issued by a detached and neutral magistrate." *Atkins v. Commonwealth*, 9 Va. App. 462, 464, 389 S.E.2d 179, 180 (1990).

In the ordinary case, "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Tart v, Commonwealth*, 17 Va. App. 384, 390, 437 S.E.2d 219, 222 (1993) (citation omitted). Thus, the "deterrent effect of the exclusionary rule is absent where an officer, acting in objective good faith, obtains a search warrant from a magistrate and acts within the scope of the warrant." *Janis v. Commonwealth*, 22 Va. App. 646, 653, 472 S.E.2d 649, 653, aff'd *en banc*, 23 Va. App. 696, 479 S.E.2d 534 (1996) (citation and internal quotation omitted).

The good faith exception does not apply in four situations: where (i) the magistrate was misled by information which the affiant knew or should have known was false, (ii) the issuing magistrate "totally abandoned his judicial role," (iii) the warrant was based on an affidavit "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable, or (iv) the warrant was so "facially deficient" that an executing officer could not reasonably have assumed it was valid. *Moyer*, 33 Va. App. at 24-25, 531 S.E.2d at 588; *Polston*, 255 Va. at 503, 498 S.E.2d at 926; *Robinson v.*

---

[5] One issue *not* presented by Hoverstadt's motion is whether, absent the affidavit, the warrant itself disclosed the suspected criminal offense justifying the issuance of a search warrant. *See, e.g., Lebedun v. Commonwealth*, 27 Va. App. 697, 708-09, 501 S.E.2d 427, 432-33 (1998) (if attached to the warrant, an affidavit that identifies the underlying offense satisfies the requirements of both the Fourth Amendment and Va. Code Ann. § 19.2-56). The search warrant issued for Hoverstadt's home identifies a violation of Va. Code Ann. § 18.2-250 (possession of illegal drugs) as the suspected criminal offense underlying the warrant.

*Commonwealth*, 19 Va. App. 642, 647, 453 S.E.2d 916, 918 (1995); *Atkins*, 9 Va. App. at 464, 389 S.E.2d at 180.

None of the four disqualifying situations exists here. Nothing in the affidavit or Officer Johnakin's sworn testimony materially misled the magistrate. Though the magistrate did not attach the affidavit to the warrant, this error could not have had a material impact on the probable cause determination. Nor could this procedural mistake lead to the conclusion that the magistrate totally abandoned his judicial role or agreed to accept a bare-bones affidavit "so lacking in indicia of probable cause" or "so facially deficient" that reliance on it could be challenged as patently unreasonable. *Id.* For these reasons, this is not among the class of "unusual cases in which exclusion will further the purposes of the exclusionary rule." *United States v. Leon*, 468 U.S. 897, 918 (1984).

In sum, the Court denies Hoverstadt's motion to suppress the evidence of cocaine found in her home. For three reasons, the absence of any breach of the Fourth Amendment, the lack of any statutory suppression remedy under state law, and the presence of good faith by the officers conducting the search, the Court has no legal grounds to exclude the incriminating evidence recovered pursuant to the search warrant. It is so ordered.