# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Commonwealth of Virginia

v.

Stephen David Duncan

### Case No. CR00-851

Commonwealth of Virginia

v.

Debbie Dee Duncan

### Case No. CR00-587

### December 8, 2000

BY JUDGE WILLIAM H. LEDBETTER, JR.

In pretrial motions, the defendants ask the court to suppress evidence seized by officers in a search of their home pursuant to a search warrant.

The court conducted a suppression hearing on October 18, 2000, and held that the search warrant was properly issued by the magistrate upon probable cause. Consequently, the court ruled that the search did not violate the defendants' constitutional right against unreasonable search and seizure. Nevertheless, the court agreed to give further consideration to the manner in which the officers executed the warrant — application of the so-called "knock-and-announce" rule — and took that single issue under advisement. Counsel submitted memoranda. This opinion addresses that issue.

*Applicable Legal Principles*

The United States Supreme Court has held that the common law "knock-and-announce" principle is an element of the reasonableness inquiry under the Fourth Amendment. Although some extreme circumstances may justify entry without knocking and announcing ("the no-knock" entry), the Fourth Amendment includes a general presumption that police officers executing a search warrant for a residence must announce their presence and authority before entering. If the occupants do not admit the officers within a reasonable time, the officers may be deemed to be refused admittance, and they may then enter by force. *Wilson v. Arkansas*, 514 U.S. 927, 131 L. Ed. 2d 976, 115 S. Ct. 1914 (1995).

There is no clear-cut standard or bright-line test by which to determine the amount of time officers must wait after knocking and announcing before entering a residence. What is reasonable depends upon all the circumstances confronting the officers serving the warrant. The time that must elapse after knocking and announcing varies with the exigencies of each case. *Richards v. Wisconsin*, 520 U.S. 385, 137 L. Ed. 2d 615, 117 S. Ct. 1416 (1997); see also *Lewis v. Commonwealth*, 26 Va. App. 113, 493 S.E.2d 397 (1997); *Hargrave v. Commonwealth*, 21 Va. App. 320, 464 S.E.2d 176 (1995); and *Wynne v. Commonwealth*, 15 Va. App. 763, 427 S.E.2d 228 (1993).

The "knock and announce" rule is designed to give notice to occupants of the officers' presence. It discourages violence and volatile confrontations. It preserves the general sanctity of the home. It encourages the orderly execution of warrants.

*Facts*

A detective with the Spotsylvania County Sheriff's Department obtained a search warrant from an on-duty magistrate on the night of June 13, 2000. The warrant authorized the officers to search the home of the defendants. Their home is a single-family, two-story dwelling in Lake Wilderness, a residential subdivision.

The officers assembled a seven-member "emergency response team" (ERT), three detectives, and a special agent of the Virginia State Police.

At about 1:30 a.m., the officers arrived at the Duncans' residence. When everyone was properly stationed, one of the ERT members knocked on the front door several times with his fist and shouted "police, search warrant." He paused several seconds, and repeated the process. Hearing no response from

inside the house, that officer stepped aside and another ERT member struck the door twice with a battering ram.

The first blow broke a panel out of the door. The second blow splintered another door panel. As a result, some of the officers on the porch could see Mr. Duncan at the top of the stairs coming toward the door. No further blows were struck as Mr. Duncan came to the door. According to the officers, Mr. Duncan then put his hand through the door. Thinking that Mr. Duncan was "lunging" toward them, the officers grabbed him, restrained him, and entered the home.

According to the testimony, the elapsed time between the first knock and the first blow of the battering ram was between fifteen and thirty seconds.

The officers arrived at the Duncans' residence with information that there were drugs inside the house and that Mr. Duncan was known to possess a firearm. They also knew that the Duncans were the parents of small children who were probably in the house. Finally, the officers knew that there were no lights on and no signs of activity inside the house.

## Decision

It is impossible to make a determination of the reasonableness of a "knock-and-announce" entry by delicately synthesizing all the reported cases. As noted above, reasonableness must be ascertained from the facts and circumstances known to the officers at the time. In no two cases are the facts and circumstances the same. Thus, a trial court must look to the guiding principles enunciated in previous cases by state and federal appellate courts, and apply those principles to the peculiar facts of the case before it.

Considering the facts and circumstances of this case and the applicable principles governing the execution of warrants, the court is of the opinion that the Duncans' rights against unreasonable searches and seizures were abridged by the method the officers used to gain entry.

It is important that (1) the officers executed this warrant in the middle of the night when most people would be asleep; (2) there were no signs of activity inside the house; (3) the home is located in a residential subdivision, not in a crime-infested area or in a secluded location; (4) the home is a two-story single family dwelling, not an apartment, mobile home, or similarly small dwelling; and (5) the home was occupied by a family, a mother, father, and two small children.

It is also important that based upon the officers' description and re-enactment of the entry at the suppression hearing, the elapsed time for the entire process was closer to 15 to 20 seconds than 30 seconds.

Finally, the court is disturbed by the forthright testimony of at least two officers that "knock-and-announce" entries in this County customarily result in forcible entries because occupants do not respond in time. If, as the testimony seems to suggest, officers are making forcible entries in almost every case, it should be apparent that they are not allowing enough response time. Forcible entry is supposed to be the exception, not the rule. In a sizeable percentage of these cases, occupants ought to be able to reach the door before the officers break it down.

Given the circumstances enumerated above, it is clear that the procedure used by the officers in this case was not designed to elicit a response. It was arranged, deliberately or inadvertently, so that there would be no response and the officers would effect a forcible entry. Human experience and common sense instructs us that people who are asleep in an upstairs bedroom, in the middle of the night, cannot awaken, react, and respond to sharp knocks on their front door within 15, 20, or even 30 seconds.

If officers do not give the occupants a reasonable time to respond to their knocks and announcements, the procedure is really tantamount to a "no-knock" entry. Here, the Commonwealth does not contend that such exigencies existed that would have allowed a "no-knock" entry.

For these reasons, the court is of the opinion that the officers did not comply with the "knock-and-announce" rule. Their entry was improper. Thus, the ensuing seizure of items inside the residence must be suppressed.

The motion to suppress is granted in each case. Because it is apparent that the Commonwealth cannot proceed without the suppressed evidence, the charges will be dismissed and the joint jury trial set for February 7, 2001, will be removed from the docket.